Richardson *v.* City of Brooklyn.

---

## RICHARDSON *vs.* THE CITY OF BROOKLYN.

A contract in writing was entered into, on the 14th of February, 1854, between J. B. and the city of Brooklyn, by which the former agreed to furnish all the materials and do the work necessary to grade and pave Washington avenue and D. street to the Flatbush line, in the manner specified; and the city agreed, in consideration of the due and faithful performance of the contract by J. B., to cause due diligence to be used in laying, confirming and collecting the assessment for the cost of said work, and to pay J. B., his heirs or assigns, the price per running foot therein specified, as the same should become due, and be received into the treasury from said assessment. On the 27th of January, 1855, J. B. made an order in writing,

whereby, for value received, he directed the city to pay out of the money due to him on said contract, $2000, to R. P. or order. In satisfaction of which order, the city, on the 17th of December, 1855, issued a certificate, under its corporate seal, certifying that there would be due from the city to J. B. or R. P. or order, on contract for Washington avenue grading and paving, &c., $2000, payable upon the surrender of the certificate when the assessments for said improvement should have been collected and paid into the city treasury. In an action by the holder and assignee of the certificate, against the city, for negligence in not collecting the assessments out of which the certificate was payable, it appearing that the assessment upon the property benefited had been duly made and confirmed by the corporation, and a warrant issued in due season, to collect the money, which was returned unsatisfied, for want of purchasers, after the property had been duly advertised and offered for sale ; *it was held* that the city was not bound to advertise and offer to sell the property a second time, in the hope of obtaining a purchaser; and that it was not guilty of negligence in omitting to do so.

In such a case it is the duty of the contractor, or the holder of the certificate, to attend the sale and bid in the property, for the protection of his own interests, and resell it for his own benefit.

The contractor makes his bargain, and undertakes the work, with express reference to the source from whence he is to receive payment. And if the source proves insufficient to recompense him for what he has done, the· statute has provided no means for his indemnity. *Per* BROWN, J.

THE complaint in this action alleged that on the 14th day of February, 1854, the defendants and one James Bennett made a contract in writing, by which the said James Bennett agreed with the defendants to furnish all the materials and do all the work necessary to grade and pave Washington avenue and Douglass street to the Flatbush line, in the city of Brooklyn, in the manner set forth in said contract ; that previous to making said contract, the defendants had by resolution determined to make the above named improvement, and had by resolution duly authorized the said contract to be made with the said James Bennett, at the price or sum of three dollars and thirty-nine cents per running foot through the center ; and the defendants, in and by the said contract, did agree with the said James Bennett, in consideration of the due and faithful performance of the said contract by the said Bennett, to cause due diligence to be used in laying,

confirming and collecting the assessment for the cost of said work, and to pay or cause to be paid to the said James Bennett, his heirs or assigns, the said contract price, as the same should become due, and be received into the treasury from said assessment. The plaintiff further alleged that the said James Bennett duly performed all the conditions of the said contract on his part, prior to the 17th day of December, 1855. And that on the 27th day of January, 1855, the said James Bennett made an order in writing, whereby, for value received, he directed the defendants to pay out of the moneys due to him on the said contract, two thousand dollars to R. P. Perrin, cashier, or order, which said order, on the 27th day of January, 1855, was duly filed with the defendants; and that in satisfaction of the said order, the defendants, on the 17th day of December, 1855, duly executed, under their corporate seal, a certificate in the words and figures following:

" No. 713. $2000. This certifies that there will be due from the city of Brooklyn to James Bennett or R. P. Perrin, cashier, or order, on contract for Washington avenue grading and paving from Douglass street to city line, the sum of two thousand dollars, payable upon the surrender of this certificate, when the assessments for said improvements shall have been collected and paid into the city treasury.

In witness whereof, these presents are executed this seventeenth day of December, 1855.

[L. S.]                                GEORGE HALL, Mayor.

Attest, S. J. Burr, Assistant City Clerk."

Countersigned by the comptroller.

Which said certificate the defendants delivered to the said R. P. Perrin, cashier; that the said Perrin duly indorsed the same on the back thereof for value received, and directed the defendants to pay the same to William A. Coit, or order, and delivered the same to the said Coit; that the said William A. Coit, for value received, indorsed and delivered the same to the plaintiff, who is now the lawful owner and holder

thereof; that the said certificate has not been paid, or any part thereof; that the assessment for the cost of the said work was duly confirmed on the 5th day of June, 1854; that the defendants might, with due diligence, have collected the whole assessment for the cost of the said work, on or before the first day of January, 1856; that they did not cause due diligence to be used in collecting the said assessment, whereby the said assessment has not been yet collected, nor sufficient thereof to pay any part of the aforesaid certificate. Wherefore the plaintiff demands judgment for the sum of two thousand dollars, with interest from January 1st, 1856, and costs.

The answer was a general denial. The action was tried by a jury, in the city court of Brooklyn, in April, 1861. Verdict in favor of the plaintiff, for $2746.27. From the judgment entered thereon the defendant appealed. The other material facts are detailed in the opinion of the court.

*D. P. Barnard*, for the plaintiff.

*Alexander McCue*, for the defendant.

*By the Court*, BROWN, J.   This is an appeal from a judgment recovered by the plaintiff, in the city court of Brooklyn. The plaintiff is the holder of a certificate dated 17th December, 1855, signed by George Hall, mayor, S. J. Burr, assistant city clerk, and countersigned by William B. Lewis, comptroller of the city of Brooklyn, for $2000, which will be due to James Bennett or R. P. Perrin, cashier, or order, on contract for grading Washington avenue, payable upon the surrender of the certificate, when the assessments for such improvements shall have been paid into the city treasury. James Bennett was the contractor, and had performed the work. The expenses of the improvement had been duly assessed upon the property benefited, and a warrant duly issued to the collector to collect the assessment, which was returned

unsatisfied. The lands charged with the assessment were advertised and put up for sale on the 11th day of October, 1855, and a portion of them sold to bona fide purchasers; the proceeds of which sale were duly applied in satisfaction of a part of the expenses of the work, and the residue of the lands were offered for sale, and no one bidding or offering to purchase the same, they were struck down by the officer to James Bennett, the contractor, who had not perfected the sale by accepting the certificate in satisfaction of the assessment, interest and expenses. The payees or holders indorsed over the certificate to one William A. Coit, who indorsed it over to the plaintiff. The action is for negligently omitting to enforce the collection of the assessments and to pay the money in satisfaction of the certificate.

This is the third judgment that the plaintiff has obtained in the city court in this action, for the recovery of the money mentioned in the certificate. The first judgment was reversed in this court for misdirection of the judge upon the trial. (*Richardson* v. *City of Brooklyn,* 31 *Barb.* 152.) The second judgment was reversed, because it appeared the contractor himself had become the purchaser of the property charged with the payment of the tax, and had not completed his purchase, and that the defendant had received no money applicable to the payment and unapplied to the payment of the charges for the improvement. Some new facts appeared upon the last trial, to which I will refer. It appeared from the proof that James Bennett, the contractor, was not present at the sale, and no one bid for him. Nine parcels or lots were struck down to G. W. Chapman, and the residue the street commissioner says he struck down to James Bennett, the contractor, but without his authority. There were no bidders for the property struck off to Bennett. Archibald T. Lawrence, the street commissioner, who conducted the sale, says that he held the bid open for any party to take the title of Mr. Bennett, and found no purchaser; by which I understand him to mean, that he was ready at all times to execute

and deliver the certificate of sale to any person or persons who would take the property at the bid and pay the assessment, interest and expenses. He also testified that he had not been applied to, nor had any one else in his office been applied to, to readvertise and resell the lots. To the same effect was also the testimony of the street commissioner, William W. Gardner. William A. Coit, the plaintiff's assignor, also testified that he had called upon Lawrence, the comptroller, and also on the street commissioner, and insisted that if the money was not collected, the property should be resold, and was told that it had been struck down to Bennett, who would pay soon. He further said, that about three months thereafter, " I offered to take an amount of the property sufficient to pay the certificates, but they would not do it unless I paid the interest and damages, &c. amounting to $600 or $700, and I could get none unless I took the whole. Lawrence, the street commissioner, offered that if I would take a transfer of any of the parcels knocked down to Bennett, and pay what was due on them for interest and expenses, he would allow me to do so, and I to receive from the comptroller so much of the amount which they received as might be applicable to the payment of the certificates." It was admitted there was no money in the possession or treasury of the city applicable to the payment of the expenses of the improvement.

By reference to the contract between Bennett and the city, set out in the case, the latter agreed to receive the payment for the work stipulated in the contract, as the money should be collected from time to time on the assessments therefor; and the city also agreed, on its part, to cause due diligence to be used in laying, confirming and collecting the assessments for the cost of the work, and pay the same to the contractor, as the same should become due and be received into the treasury. The obligation of the city is not to pay the expenses of the improvement, absolutely. The expenses are not a charge upon the city generally, but upon the persons

and the property benefited. The city was diligently to execute the power given to them by the statute, to assess and collect the money, and when collected to apply it in payment of the cost of the work. The proof taken in the action shows that the assessment was made and confirmed. A warrant was issued in due form and season to collect the money, which was returned unsatisfied, with the usual affidavit of the collector, that there were no goods and chattels out of which the collector could make the money, and that he had given and published the requisite notices. That the property charged with the payment of the expenses had been duly advertised and offered for sale, and that there were no purchasers who were willing to accept a title for such lands, and pay the amount assessed, with the interest and expenses.

Up to this stage of the proceedings, there is no lack of diligence attributed to the city, or its officers. The letter of the statute under which the improvement was made, was complied with. And if there was any thing else to be done by the city to exonerate itself from the charge of negligence, it results by implication, and not from express direction. The plaintiff contends that the collector of the city was bound to readvertise, and offer and attempt to resell the property charged. The city, he says, was under an obligation to incur the expense of advertising the property for 12 weeks longer in all the corporation newspapers, and offering it for sale again at auction, in the hope of finding bidders at that time. It is to be noticed that this class of sales are not sales made for whatever sum of money may be the highest sum bid for the particular lot offered, but the sale is to the bidder who, for the lowest term of years, will take the same and pay the amount of the tax charged upon the lot, with the interest and expenses. The bidder must take the lot at the fixed price, and nothing less, and the competition is upon the duration of the term for years, and not upon the price to be paid. See section 26, title 5, of the act of the 17th of April, 1854, to consolidate the cities of Brooklyn and Williams-

burgh and the town of Bushwick. The city of Brooklyn did not fail to effect a sale of the lots struck down to Bennett from any irregularity in the proceedings, or omission to give the proper notice, or the misconduct of its officers. It failed to effect a sale and to realize money therefrom to pay the expenses of the improvement, because no one of all the inhabitants of a populous city, after a notice of the sale for 12 successive weeks in the public papers, could be found who would accept the title for any term of time for the lands, and as an equivalent therefor, pay the tax and the interest and expenses.

Improvements in cities—improvements local in their nature, such as the construction, grading and paving streets and avenues, the cost of which is by law chargeable upon the property in the immediate vicinity—are often pushed far bebeyond the public wants and necessities, and quite as often against the will of the land owners who are thought to be benefited. It may happen—nay, it does happen—and, judging from the evidence, it has happened in the case of grading and paving Washington avenue, that the cost of the improvement exceeds the present value of the property charged with the burthen of its payment. Bankruptcy and ruin caused by the coercive improvement of one's property, is no novelty. The contractor makes his bargain, and undertakes the work with express reference to the source from whence he is to receive payment. And if the property proves insufficient to recompense him for what he has done, the statute has provided no means for his indemnity. This consequence may have been intended to operate as a salutary restraint upon improvident and needless improvements. When the lands charged with the payment of the tax are advertised and brought to a sale, the duty of the contractor and those to whom he may have assigned the certificates given for his compensation is plain enough. They cannot absent themselves from the sale, and leave the affair to take care of itself, and

Richardson *v.* City of Brooklyn.

when it fails, for want of purchasers to take the property and pay the tax, call upon the city collector to readvertise and offer the lands for sale from time to time, and as often as may be necessary, until a purchaser can be found. The provision of the statute regulating and providing for the sale, must receive a reasonable interpretation; and it is far more reasonable to say that the contractor, or person claiming the tax, must take care of his own interest, bid in the lands himself, and resell them at his own convenience and for his own benefit, rather than say that the officers of the city are to advertise and offer to sell a second, and perhaps a third time, in the hope that some disinterested person will purchase.

In the present case, the lots which no one would purchase were bid off in the name of James Bennett, the contractor, and he, or those entitled to his compensation, could have had the title to the lands in satisfaction thereof. The plaintiff's assignor, William A. Coit, was offered by the collector any of the parcels struck off to Bennett, upon his paying what was due upon them, and be allowed and credited his just and appropriate share of the money applicable to the payment of the certificate which he claims to recover in this action. I will not say that the officers of the city might not, within the limit of their authority, have readvertised and made another effort to sell the property. I will not say that their power was expended, and, in respect to the lands, they were *functus officio*. But I think, in view of all the circumstances disclosed by the proof, they were under no legal obligation to do any thing of the kind, and that the charge of negligence and want of diligence, set up in the complaint, was not made out. In *Beard* v. *The City of Brooklyn,* (31 *Barb.* 142,) which was a similar action for the negligent omission to enforce the collection of a street assessment, the warrant was issued to the collector in July, 1848. It had not been returned, and no other effort or proceedings were had by the officers of the city to collect the tax. In its

principal features it has little resemblance to the case under consideration.

The judgment of the city court should be reversed, and a new trial granted, with costs to abide the event.

[ORANGE GENERAL TERM, September 9, 1861. *Emott, Brown* and *Scrugham,* Justices.]