[File No. 6221.]

ED. C. ANDERSON, Appellant, v. CITY OF FARGO, a Municipal Corporation, et al., Respondents.

(250 N. W. 794.)

Opinion filed October 31, 1933.

*Conmy, Young & Conmy,* for appellant.

A. J. *Gronna,* Attorney General, *P. O. Sathre,* Assistant Attorney General, and *M. W. Murphy,* for respondents.

BIRDZELL, Ch. J. This action was brought by the plaintiff as a taxpayer in the city of Fargo on behalf of himself and all other taxpayers similarly situated seeking an injunction against further proceedings in connection with a proposed improvement project, under chapter 179 of the Session Laws of 1933. From a judgment denying the relief sought and dismissing the action, the plaintiff appeals to this court.

The issues presented here involve the construction of certain provisions of chapter 179, Session Laws of 1933, and these provisions require consideration in connection with §§ 183 and 184 of the Constitution of North Dakota, as well as the "due process" clauses of both the state and federal constitutions.

The record shows that the city of Fargo maintains a sewage system

so constructed that there are ten outlets for discharging the sewage collected in the city into the bed of the Red River of the North; that owing to the greatly depleted flow of water in that stream in recent years, or at least partly on account of such fact, the discharge of the sewage into the stream constitutes a nuisance which should be abated as early as possible and the dangerous situation thereby resulting speedily remedied.

In April, 1933, the city commissioners constituted the entire area of the city as a special improvement district for the construction of a sewage disposal plant. Proceeding under the provisions of subdivision 3 of § 2, chapter 179, Session Laws of 1933, the necessary steps were taken to create such district and to provide for a project that would collect sewage and dispose of it in a sanitary manner. The plans, specifications and estimates were approved and filed and the board of commissioners duly passed and published the resolution of necessity. This being done, the city made application in August, 1933, to the United States government for a federal grant and loan to defray the costs of construction as provided in the Act of Congress of June 16, 1933, known as the National Industrial Recovery Act. The application was approved by the government on or about September 12, 1933. Under the terms of the approval by the federal government it is proposed to grant to the city of Fargo the sum of $127,000 and to loan to the city the further sum of $385,000 to be repaid with interest at the rate of 4 per cent per annum in twenty equal annual instalments commencing on July 1, 1936, the grant and loan to be used for the erection and installation of the proposed sewage disposal plant. Further steps were immediately taken looking toward entering into a contract for construction. The date for opening bids lies in the immediate future.

In considering the questions presented on this appeal it is necessary, first, to refer to chapter 179 of the Session Laws of 1933 to determine the scope of the authorization and the character of the obligations which it was contemplated might be issued in pursuing the authority to a consummation. Section 1 of the Act permits governmental agencies or municipalities to operate and maintain "intercepting sewers, including pumping stations, a plant or plants for the treatment, purification and disposal in a sanitary manner of the liquid and solid wastes, sew-

age and night soil of or a plant or system for the disposal of garbage of such governmental agencies and municipalities." The improvement in question is clearly within this section, and there is no contention to the contrary. Section 2 provides for different methods for defraying the cost of such improvements. According to the first method the cost may be defrayed out of the general current tax revenues on hand and appropriated for the purpose, or out of the proceeds of the sale of general liability bonds in accordance with certain existing laws, or partly out of general current tax revenues and partly out of proceeds of the sale of general liability bonds. The second method outlined in subsection 2 of § 2 provides for the issuance of mortgage bonds beyond the general limits of the bonded indebtedness prescribed by law for the purpose of defraying such cost. It is specifically provided that such bonds "shall not impose any general liability upon the governmental agencies or municipalities but shall be secured only on the property and revenues, including the service rentals as hereinafter provided of such system or systems." The amount of such bonds authorized to be issued may not exceed 60 per cent of the cost of the improvement "except as hereinafter provided," the remaining 40 per cent of the cost to be defrayed by issuance of bonds under subsection 1 above referred to upon a three-fifths affirmative vote of the legislative body of the governmental agency or municipality.

The first paragraph of subsection 3 of § 2, chapter 179, Session Laws of 1933, this being the section under which the authorities have acted in projecting the instant improvement, reads as follows:

"Governmental agencies or municipalities may defray the total cost of such improvement or system out of the proceeds of the sale of first mortgage bonds upon the assets and property of such improvement or system in like manner as provided in the preceding subsection except that such first mortgage bonds may be issued for the total cost of such improvement and be also secured by a pledge of the net revenues of such improvement or system to be set apart as an interest and sinking fund to pay the principal and interest of such first mortgage bonds as the same mature. Any municipality which follows the method provided in this subsection to defray the cost of such sewage disposal system shall by resolution of its legislative body or governing board create the district, provide for and approve plans and specifications and

estimates of cost and adopt and publish the resolution declaring the work necessary to be done in accordance with the requirements, so far as applicable, of §§ 3698, 3699, 3703 and 3704 of the Compiled Laws of 1913 and Acts amendatory or supplementary thereof."

There is no contention involving the regularity of the proceedings for the creation of the district or involving any of the preliminary steps, except as they relate to bonds, looking toward a contract for the construction of the improvement. The sole contention is that the contemplated bonds cannot be regularly issued for reasons which will appear below.

It is first argued that the bonds are necessarily a general liability of the city and that by the express provision of § 5 as follows: "Provided that bonds issued hereunder which are a general liability of the city shall not be issued except upon a vote of the people as provided by chapter 196 of the 1927 Session Laws and Acts amendatory and supplementary thereof," such bonds will be invalid by reason of no vote having been taken. This argument is further supported by reference to § 6 of the Act, which reads as follows:

"When the last maturing bonds secured by a first mortgage on such improvement as herein provided for come due and are not paid and a deficiency remains, the legislative body or the respective legislative bodies of the governmental agencies or municipalities herein mentioned shall levy a tax upon all of the taxable property within the limits of such governmental agencies or municipalities for the payment of such deficiency. After the bonds secured by first mortgage on such improvement have been fully paid, both principal and interest, the revenues of such utility and improvement set apart for the payment of such bonds may be used for the repair, improvement or extension of such utility or improvement or may be credited to the interest and sinking fund established for the retirement and payment of the general liability bonds, or transferred to the general fund as the legislative body or the respective legislative bodies of the governmental agencies or municipalities herein mentioned may by resolution direct."

The specific contention is made that, since this section directs any deficiency in the fund to meet the last maturing bonds to be made up by a tax levy upon the taxable property in the municipality, the bonds in fact create a general liability.

In subsection 2 of § 2, there is a very clear manifestation of intention on the part of the legislature to authorize the issuance of mortgage bond securities to finance the construction of an improvement which shall not carry a general liability of the municipality, for it is there stated that these mortgage bonds may be issued *beyond the general limitation of the bonded indebtedness prescribed by law,* and this is. accompanied with the statement that they shall not impose any general liability. The bonds to be issued under subsection 3 of § 2 are to be first mortgage bonds upon the assets and property of such improvement or system in like manner as provided in the preceding subsection, except that they may be issued for the total cost of such improvement and be "also secured by a pledge of the net revenues of such improvement or system to be set apart as an interest and sinking fund to pay the principal and interest." This appears to us to be a clear expression that these bonds are to carry only the security provided for mortgage bonds in the preceding subsection. True, the matter could well have been placed beyond all doubt by an express provision to that effect such as is contained in the preceding subsection. However, if this be considered an omission, such omission is certainly supplied by the statement in § 4 of the Act as follows: "Bonds which are issued and secured by a mortgage on the utility as hereinbefore provided *shall not be a general obligation of the governmental agency or municipality* but shall be paid only out of revenues received from the service charges as provided in this Act or from the sale of the property under foreclosure of the mortgage." In light of this strong language which completely negatives the existence of a general obligation on the part of the municipality issuing bonds under subsection 3, further discussion is not required in answer to the contentions based upon the proviso in § 5 and upon § 6. In view of this explicit declaration, under a consistent construction of the act, § 6 can amount only to an expression of authority or duty to levy a tax upon the condition that at the date of the last maturing bonds there is a deficiency in the fund to meet them. It is a cardinal principle of statutory construction that the various provisions of a statute should be so construed as to render them consistent one with the other, and there is not in § 6 any expression of general liability which can be said to be directly opposed to the clear expression to the contrary in subsection 3 of § 2 and in

§ 4. Consequently, § 6 cannot be construed as pledging the general credit of the corporation.

It is next contended that the issuance of bonds of the character contemplated without a vote involves a violation of § 183 of the Constitution. That section reads:

"The debt of any county, township, city, town, school district or any other political subdivision shall never exceed five per centum upon the assessed value of the taxable property therein; provided that any incorporated city may, by a two-thirds vote, increase such indebtedness three per centum on such assessed value beyond said five per centum limit, and a school district, by a majority vote may increase such indebtedness five per centum on such assessed value beyond said five per centum limit; provided also that any county or city by a majority vote may issue bonds upon any revenue producing utility owned by such county or city, or for the purchasing or acquiring the same or building or establishment thereof, in amounts not exceeding the physical value of such utility, industry or enterprise.

"In estimating the indebtedness which a city, county, township, school district or any other political subdivision may incur, the entire amount, exclusive of the bonds upon said revenue producing utilities, whether contracted prior or subsequent to the adoption of this Constitution, shall be included; provided further, that any incorporated city may become indebted in any amount not exceeding four per centum of such assessed value without regard to the existing indebtedness of such city for the purpose of constructing or purchasing water works for furnishing a supply of water to the inhabitants of such city, or for the purpose of constructing sewers and for no other purposes whatever. All bonds and obligations in excess of the amount of indebtedness permitted by this Constitution, given by any city, county, township, town, school district, or any other political subdivision shall be void."

More specifically, the argument is that it violates the proviso therein "that any county or city by a majority vote may issue bonds upon any revenue producing utility owned by such county or city, or for the purchasing or acquiring the same or building or establishment thereof, in amounts not exceeding the physical value of such utility, industry or enterprise." This proviso, in our opinion, contemplates only such bonds as may be issued upon the general credit of the governmental

body but which are further sustained by a revenue producing utility. It will be noticed that this section is concerned primarily, if not exclusively, with the limitation of indebtedness. It fixes the limitation at 5 per cent upon the existing value of the taxable property. Then by an appropriate proviso it permits such limitation to be extended a further step by a vote, and an additional proviso is added which permits a county or city by a majority vote to issue bonds that may exceed the debt limit in an amount equaling the physical value of the utility, industry or enterprise upon which such bonds may be issued. It is the office of a proviso to limit the sense or effect of something that has gone before (50 C. J. 834; Lewis's Sutherland, Stat. Constr. 2d ed. § 351), and the effect of that part of § 183 preceding this proviso is to prescribe a 5 per cent limitation upon the indebtedness of the enumerated municipalities. This second proviso, like the first, prescribes a condition or conditions to be met when it may be desired to increase such limitation.

It follows from this that bonds issued under the authority of the act in question which do not increase the indebtedness of the city are not within the proviso of paragraph 1 of § 183 of the Constitution, and, consequently, so far as that section is concerned a vote is not a prerequisite.

It may be remarked in passing that the second paragraph of § 183 of the Constitution authorizes any incorporated city to become indebted in any amount not exceeding four per cent of the assessed value without regard to the existing indebtedness of such city for the purpose of constructing waterworks or sewers. Even if the bonds in the instant case should be considered as carrying a general liability of the city, it is not shown that they are not within the permissible limitation of this section. On the contrary, it rather appears they are within such limitation. We are clearly of the opinion that an expenditure for any facility which is an essential part of the sewer system and which is dictated by a most urgent sanitary consideration in the disposal of sewage is within the authorization of this provision of the Constitution.

In view of this conclusion we find it unnecessary to consider further argument of counsel to the effect that limitations cannot be evaded

by indirection such as the pledging of revenues or making obligations payable from a particular fund.

It is argued that the bonds violate § 184 of the Constitution as follows:

"Any city, county, township, town, school district, or any other political subdivision incurring indebtedness shall at or before the time of so doing, provide for the collection of an annual tax sufficient to pay the interest and also the principal thereof when due, and all laws or ordinances providing for the payment of the interest or principal of any debt shall be irrepealable until such debt be paid."

What has been said above is sufficient to dispose of this contention. This section contemplates only bonds which are a general liability.

The remaining contention is that the plan in question violates the due process clauses of the State and Federal Constitutions. It is said that it levies an assessment or tax upon the property of individuals affected without a notice or opportunity for hearing. By § 3 of the Act the service charges are a matter for legislative regulation. It is provided that if the charges so established be not paid when due the same may be recovered by the governmental agency or municipality in an action at law, and they may also be assessed against the premises served and collected and returned in the same manner as other county and municipal taxes are assessed, certified, collected and returned. We are of the opinion that this contention is completely answered by the case of Carson v. Brockton Sewerage Comrs. 182 U. S. 398, 45 L. ed. 1151, 21 S. Ct. 860. In that case a parallel situation was presented and it was sustained as against the attack that it violated due process.

It follows that the proposed bonds in question are not subject to the objections urged and that the judgment appealed from must be affirmed. It is so ordered.

CHRISTIANSON, BURKE, BURR and NUESSLE, JJ., concur.