ROBERTSON v. TILLMAN.

1. CONSTITUTIONAL LAW—STATUTES—PUBLIC DEBT.—Whenever a new debt is contracted by the State for extraordinary expenditures, it must be created by a statute which has passed both branches of the General Assembly by a vote of two-thirds of the members, to be recorded by name on the journals of each house respectively (art. IX., § 7), after it has been approved by a vote of two-thirds of the voters at a general State election (art. XVI.); but bonds and stock issued in exchange for, or in redemption of, other evidences of indebtedness then outstanding, creates no new debt, and may be authorized by an act of the legislature passed as acts ordinarily are (art. IX., § 10). Therefore, the act of 1892 (21 Stat., 24), providing for the redemption of the State debt which matured July 1, 1893, was valid and constitutional, though not passed by a recorded two-thirds vote nor authorized by a vote of the people.

2. IBID.—IBID.—IBID.—The issue and sale of the new bonds for the purpose of redeeming the old, and the deposit of the proceeds of such sale in the State treasury, from which it can be drawn by law only for the purpose of paying the old debt, is not the creation of a new debt or the increase of

───────────────

[1]This completes the cases of November Term, 1892.—REPORTER.

the public debt, even though necessarily for a short time the old bonds and the new are both outstanding.

3. CASES CRITICISED.—This case distinguished from the Bond Debt Cases, 12 S. C., 200, and Whaley *v.* Gaillard, 21 S. C., 560.

4. PUBLIC DEBT—INTEREST—ORDINARY EXPENDITURE.—The new bonds having been issued before the maturity of the old debt, so that a fund would be provided for the punctual payment of the old debt, the currency of interest on both series for the intervening period, did not operate as an increase of the public debt based upon an extraordinary expenditure of money, the payment of interest on the public debt being an ordinary annual expenditure.

This was an original application to this court by Edwin W. Robertson, bondholder of old debt and taxpayer, for a writ of injunction to restrain B. R. Tillman, governor, and W. T. C. Bates, state treasurer, from issuing new bonds under their contract with the purchasers.

*Messrs. Robertson & Moore,* for petitioner.

*Messrs. Townsend,* attorney general, *Inglesby & Miller* and *John N. Steele,* contra.

May 15, 1893. The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER. This is an application, addressed to this court in the exercise of its original jurisdiction, instituted by the plaintiff, as a citizen and taxpayer of this State, to enjoin and restrain the defendants from issuing the bonds of this State, to the amount of five million two hundred and fifty thousand dollars, to the Baltimore Trust and Guarantee Company, under a contract between said company and the defendants, heretofore adjudged to be valid by this court, in the case of *Evans* v. *Tillman,* 38 S. C., 238, upon the ground that the act of the General Assembly purporting to authorize such issue is unconstitutional and void. The defendants have demurred to the petition presented by the plaintiff, and thereby admit all the material allegations of fact made by the plaintiff. So that the only question presented for our determination is purely one of law, viz: whether the act above referred to is unconstitutional.

This act is entitled "An act to provide for the redemption of that part of the State debt known as the brown consol bonds and stocks by issue of other bonds and stocks," and was duly approved by the Governor on the 22d of December, 1892. 21 Stat., 24. And it being admitted by the pleadings that said act "was not passed by a vote of two-thirds of the members of each branch of the General Assembly, recorded by yeas and nays on the journal of each house respectively," it is claimed by the plaintiff that it was not passed in conformity to the requirements of section 7, article IX., of the Constitution of this State, and has not, therefore, the force of law. That section of the Constitution reads as follows: "For the purpose of defraying extraordinary expenditures, the State may contract public debts; but such debts shall be authorized by law for some single object, to be distinctly specified therein; and no such law shall take effect until it shall have been passed by a vote of two-thirds of the members of each branch of the General Assembly, to be recorded by yeas and nays on the journal of each house respectively; and every such law shall levy a tax annually sufficient to pay the annual interest of such debt."

It is very clear that if the act in question can properly be regarded as authorizing the issue of bonds for the purpose of defraying extraordinary expenditures, it would be unconstitutional, because not passed in the mode prescribed by the above quoted section of the Constitution. The material inquiry, therefore, is, whether the act in question is to be tested by the provisions of section 7 of article IX. of the Constitution, or by the provisions of section 10 of the same article, which reads as follows: "No scrip, certificate, or other evidence of State indebtedness shall be issued, except for the redemption of stock, bonds, or other evidences of indebtedness previously issued, or for such debts as are expressly authorized in this Constitution." For while the language used in section 10 is negative in form, yet it is clearly a negative pregnant, and necessarily implies that scrip, &c., may be issued in the cases excepted from the prohibition, to wit: "for the redemption of

stock, bonds, &c., previously issued, or for such debts as are expressly authorized in this Constitution."

It seems to us very clear that these two sections of the Constitution (the seventh and tenth) relate to two entirely distinct and different matters. The former authorizes the contracting of a public debt for the purpose of obtaining money to defray extraordinary expenditures, while the latter authorizes the issue of scrip or other evidences of indebtedness for the purpose of redeeming bonds or stocks previously issued; and we think it equally clear that the bonds authorized to be issued by the act of 22d December, 1892, are intended to be, and can only be, issued for the purpose of redeeming bonds and stocks previously issued, and not for the purpose of obtaining money to defray extraordinary expenditures. The terms "extraordinary expenditures" necessarily imply new obligations or debts which had not been previously incurred, over and above the ordinary current expenses of the government, and hence it was wisely provided in the seventh section of the Constitution that every law authorizing the contracting of a new debt should distinctly state the object for which it was to be contracted, and that it should not take effect unless it was passed by a two-thirds vote, to be recorded by yeas and nays on the journal, in order that the taxpayers might be able to understand distinctly what was the purpose of contracting such debt, and who of their representatives voted for the same; and, as a further protection to the taxpayers, it was subsequently provided by the amendment of 1873, incorporated as article XVI. of the Constitution (the terms of which will be hereinafter more particularly considered), as a still further safeguard, that no new debt should be contracted without a vote of the people. But the scrip or other evidences of indebtedness authorized to be issued by section 10 of article IX. of the Constitution, being for the purpose of redeeming bonds or other evidences of indebtedness previously issued, and not for the purpose of creating any new debt, there was no necessity for providing any such safeguards as are found in section 7 of article IX. and in article XVI. of the Constitution, because the bonds issued under the authority of section 10 would be practically

nothing more than a change in the form of the evidences of debt previously contracted by proper authority.

It is further urged by the plaintiff that the act of 1892, authorizing the issue of the bonds now in question, violates art. XVI. of the Constitution, above referred to. That article reads as follows: "To the end that the public debt of South Carolina may not hereafter be increased, without the due consideration and free consent of the people of the State, the General Assembly is hereby forbidden to create any further debt or obligation, either by the loan of the credit of the State, by guaranty, endorsement or otherwise, except for the ordinary and current business of the State, without first submitting the question as to the creation of any such new debt, guaranty, endorsement or loan of its credit to the people of this State at a general State election; and unless two-thirds of the qualified voters of the State, voting on the question, shall be in favor of a further debt, guaranty, endorsement or loan of its credit, none such shall be created or made."

It is very manifest that the object of this constitutional provision was to prevent the General Assembly from creating any new debt of the State, "except for the ordinary and current business of the State," unless the mode therein prescribed shall be observed. So that the material inquiry now is whether the bonds to be issued under the authority of the act of 1892, will fix upon the State any new or additional debt. While it may be true, in one sense, that where a debtor borrows money for the purpose of paying a debt previously contracted, the bond which he gives to secure the payment of the money thus borrowed is the evidence of a new debt, from which it is argued that if the proper State authorities shall issue the bonds authorized by the act of 1892, and sell the same for the purpose of obtaining the money necessary to redeem the brown consols, a new debt will thereby be created, in violation of the provisions, as well of art. XVI. of the Constitution as of section 7 of art. IX. of the Constitution. Yet this is not only too narrow a view, but is inconsistent, not only with the general scope of the provisions of the Constitution, but also with the express provisions of section 10 of art. IX. That section, as we have

seen, necessarily implies that the General Assembly is invested with full authority to issue bonds for the redemption of bonds previously issued by proper authority, without pursuing the mode prescribed either in section 7 of art. IX. or in art. XVI. of the Constitution; and as we think that the word "redemption" as used in section 10 means not merely that a new bond may be issued in exchange, or as a substitute, for an old bond, but also that a new bond may be issued for the purpose of obtaining the money necessary to pay or redeem the old bond, it is clear that section 10 authorizes the issue of bonds for the purpose of obtaining money with which to pay bonds previously issued. Indeed, the most natural signification of the word "redemption" implies payment rather than exchange or substitution, though both modes may be resorted to. See 2 Rap. & Law. Law Dic., 1079; 20 Am. & Eng. Enc. Law, 607, 620–21, 638.

If, therefore, section 10 authorizes the issue of bonds for the purpose of raising money for the redemption of bonds previously issued by competent authority, it follows necessarily that the Constitution authorizes the employment of all the means necessary for the accomplishment of that object. And as it would be practically impossible to obtain the money necessary to redeem bonds previously issued, at their maturity, if the new bonds could not be issued until the old bonds matured, the result would be to make the State a defaulter, which certainly could not have been intended by the framers of the Constitution, and hence the language used in the Constitution must necessarily be so construed as to prevent such a result. We cannot accept the view so strongly urged by counsel for plaintiff, that if the new bonds are issued before the brown consols are all paid and cancelled, the debt of the State will be increased to the extent of such brown consols as are outstanding at the time the new bonds are issued. Such alleged increase is nominal rather than real, for when the money is received from the sale of the new bonds, and not only placed in the State Treasury, but actually appropriated to the payment of any outstanding brown consols, and its application to any other purpose whatsoever is expressly forbidden by the terms of the act in question, all outstanding brown consols are,

in effect, paid, and no longer constitute any part of the debt of the State. Any other view would render nugatory the provisions of section 10, art. IX., unless such provisions should be construed as so limiting the authority to issue bonds for the redemption of bonds previously issued as that such redemption could only be effected by an exchange, and not by a sale of the new bonds—a construction which, as we have seen, is inadmissible—for if all or any of the holders of the brown consols should decline or fail to surrender their bonds and receive in exchange the new bonds bearing a less rate of interest, the object contemplated by section 10 of art. IX. of the Constitution, and sought to be carried out by the act of 22d December, 1892, would be partially, if not wholly, defeated.

We are unable to discover anything in the *Bond Debt Cases,* 12 S. C., 200, or in the case of *Whaley* v. *Gaillard,* 21 *Id.,* 560, cited and relied upon by counsel for plaintiff, which conflicts withh the views hereinbefore presented. The question raised in the present case was not raised in either of those cases, and was not, therefore, considered or decided. The language quoted by counsel in argument from those two cases must be understood as applying only to the questions there raised, and has no application to a totally different question. In those cases the inquiry was as to the power of the General Assembly to pass an act without the required constitutional majority prescribed in section 7 of article IX. and in article XVI. of the Constitution, authorizing the issue of new bonds to redeem, by refunding or exchange, previously existing valid obligations of the State, and the decision was, that the General Assembly did have the power to pass an act, without the constitutional majority prescribed, providing for the issue of new bonds to redeem outstanding valid obligations of the State by refunding or exchange, under the provisions of section 10 of article IX. of the Constitution; but the court was not called upon to decide, and did not decide, and, as we think, did not even intimate any opinion as to whether such redemption could or could not be effected by sale as well as by exchange.

The quotation from *Whaley* v. *Gaillard,* at page 580, relied

on by counsel for plaintiff, can have no application here, for the language there used referred, in express terms, to the provisions and effect of the consolidation act of 1873, under which many bonds had been funded, some of which were ascertained to be not valid obligations of the State, and the plain meaning of what was there said is, that inasmuch as said invalid bonds never constituted any part of the debt of the State, any bonds issued under the provisions of the consolidation act of 1873, in exchange for such invalid bonds, would create a new debt, and would, therefore, be unauthorized, inasmuch as it was admitted that the consolidation act had not been passed in the mode prescribed by the Constitution for the creation of a new debt. Hence, even if the practical effect of the consolidation act, fully carried out, would be to *reduce*, and not to *increase*, the debt of the State, yet any bond issued under that act to redeem a bond which had been previously issued without competent authority, and, therefore, not constituting a valid obligation of the State, would have the effect of making that a debt of the State which had never been so before— would create a new debt—and would, therefore, be invalid, because the act authorizing its issue had not been passed in the only mode by which an act authorizing the creation of a new debt could constitutionally be passed. But here the act in question authorizes the issue of new bonds for the redemption of the brown consols, all of which have heretofore been ascertained to be valid and unquestionable obligations of the State, and hence the question considered in the case of *Whaley* v. *Gaillard*, just adverted to, cannot arise.

Finally, it is urged that the provision in the act of 22d December, 1892, authorizing the issue of new bonds, bearing interest at the rate of 4½ % per annum, from the date of their issue, would have, and has had, the effect (under the contract made for the sale of the new bonds which has received the sanction of this court in the case of *Evans* v. *Tillman*, 38 S. C., 238,) of increasing the public debt to the extent of the interest on the new bonds from the first of January, 1893, to the first of July, 1893, during which period the interest on the brown consols is also running, and that for this

reason the act in question is unconstitutional, because not passed by the required constitutional majority, and because it was not submitted to a vote of the people. It will be observed, however, that section 7 of article IX. of the Constitution only relates to debts contracted for the purpose of defraying *extraordinary expenditures*, and it does not seem to us that the *current* interest on the public debt can properly fall into that class of expenditures. On the contrary, it is one of the ordinary expenses of the government, annually recurring, which must be provided for by taxation annually. See *Bond Debt Cases*, 12 S. C., at page 288. It is clear, therefore, that section 7 has no application. It will also be observed that article XVI. of the Constitution, which was manifestly adopted for the purpose of throwing additional safeguards around this matter of contracting a debt of the State, expressly excepts from its operation debts contracted for the ordinary expenses of the State, and, as we have seen, the current interest on the public debt properly belongs to that class of expenditures; showing that the true intention of the Constitution was not to place the same restrictions upon the power of the General Assembly to provide for the payment of the current interest on the public debt as it had been deemed proper to place upon their power to contract a debt of the State, and that it was never intended that the current interest on the public debt of the State should be treated or considered as any part of the public debt, in the sense of those terms as used in those constitutional provisions restricting the power of the General Assembly in contracting a debt of the State.

Besides, if as we have seen, section 10 of art. IX. of the Constitution confers the power to issue bonds for the redemption of bonds previously issued, either by exchange or sale, and if as we have also seen, the grant of such power carries with it the power to do what is necessary to accomplish the purpose intended, it seems to us that the General Assembly must necessarily be invested with power to make such provisions in regard to the current interest as may be found necessary to accomplish the purpose intended. Any other view would, in certain contingencies, render section 10 absolutely nugatory. For if it

should so happen, either from adverse circumstances or from a general rise in the rate of interest, that the State should find itself unable to provide for the redemption of its debt, except by increasing the rate of interest on the bonds to be issued for that purpose, then it would become impossible to accomplish the object intended by that section—the redemption of the debt previously incurred—either by sale or exchange, if the amount by which the rate of interest is increased, should be regarded as a new debt in the sense of those terms as used in the restrictive provisions of the Constitution.

We are of opinion, therefore, that in no view of the case can the objections urged against the "act to provide for the redemption of that part of the State debt known as the brown consol bonds and stocks by issue of other bonds and stocks," approved 22d of December, 1892, be sustained, and there is, therefore, no ground for the injunction prayed for.

The judgment of this court is, that the application for injunction be refused and that the petition be dismissed.