This is a stockholder's suit brought in the right of a corporation to restrain the issue of bonds. In 1898 the New York Central and Hudson River Railroad Company purchased about ninety per cent. of the stock of the Lake Shore and Michigan Southern Railway Company. It paid for the stock by the delivery of its own bonds. The sole security accompanying the bonds was a pledge of the stock for which they paid. The date of maturity was February, 1998, and the rate of interest was three and one-half per cent. per annum. The issue was known as "The New York Central and Hudson River Railroad Company 3½ per cent. Gold Bonds, Lake Shore Collateral." There was an agreement at the same time that no merger of the two railroads would be made without the consent of seventy-five per cent. in amount of the holders of these bonds. There was also an agreement that no lien would be created in connection with any consolidation except in subordination to the bonds, which in the event of a merger were to be secured by the property of the Lake Shore and Michigan Southern Railway Company as fully as they had previously been secured by its shares. In 1911 a plan was conceived to consolidate the New York Central and Hudson River Railroad Company, the Lake Shore and Michigan Southern Railway Company and other subsidiary railroads in a single corporation to be known as the New York Central Railroad Company. We do not attempt to state the plan in detail. A statement of the general scheme is sufficient for present purposes. The holders of these Lake Shore collateral bonds were asked to consent to the consolidation, give up the security of the stock, and accept the security of a mortgage on the property of the consolidated company. That plan did not meet with the approval of the bondholders, and the requisite consent of seventy-five per cent. in amount was not obtained. Another plan was then put forward. The bondholders were offered the right to exchange their *Page 123 
three and a half per cent. bonds for four per cent. bonds secured by a new consolidated mortgage. The consolidated mortgage was to refund and secure not only the Lake Shore collateral bonds, but also other bonds issued in the past by the corporations to be merged. Those who did not wish to make the exchange were to have the right to retain their three and a half per cent. bonds as a first lien upon the property. Those who made the exchange were to have the protection of the new mortgage, subject only to the lien of such three and a half per cent. bonds as were not exchanged. More than seventy-five per cent. in amount of the Lake Shore collateral bondholders consented to the consolidation upon these terms. The contract of consolidation was made; it has been approved by the public service commission; the new mortgage has been executed; and the plaintiffs, complaining of the increase of the rate of interest from three and a half to four per cent., ask that the bonds be declared illegal and the issue enjoined.
The plaintiffs say that by the increase of the rate of interest the defendants have violated section 141 of the Railroad Law (Consolidated Laws, chap. 49; L. 1910, ch. 481, section 141, subd. 1). That section requires that an agreement for the consolidation of railroads shall prescribe the number of shares of the capital stock, the par value of each share, and the manner of converting the capital stock of each corporation into that of the new corporation. It then provides: "But in no case shall the capital stock of the corporation formed by such consolidation exceed the sum of the capital stock of the corporations so consolidated, at the par value thereof. Nor shall any bonds or other evidences of debt be issued as a consideration for, or in connection with, such consolidation." With this section must be read section 142 of the same statute, which provides that it shall be lawful for the consolidated company "to issue its bonds for the purpose of paying or retiring any bonds theretofore issued" by either of the companies so consolidated. *Page 124 
We think an increase of the rate of interest as an incident to a readjustment of existing mortgages does not constitute the issue of bonds or other evidences of debt "as a consideration for, or in connection with, consolidation," within the meaning of this statute. That provision came into our statutory law by the enactment of chapter 94 of the Laws of 1880. The bill was proposed by a special committee on railroads appointed by the assembly in 1879. The report of that committee may be read in the assembly documents for 1880. It states the mischief and suggests the remedy. It shows that as an incident to many consolidations, stock had been issued far beyond the sum of the capital stock of the consolidated companies. It shows that bonds, convertible into stock, had been issued for fictitious debts or for unreal values. It proposes to guard against the recurrence of such evils by bills framed by the committee and appended to its report. The purpose was to see to it that a merger should not be used as a pretext for issuing stock which did not represent a real value or bonds which did not represent a genuine debt.
The debt secured by the new bonds and the consolidated mortgage in controversy here is genuine beyond debate. It is the same debt that was secured by the old bonds and the stock pledged as collateral. Unearned interest to become due in the future is not a debt (Epping v. City of Columbus, 117 Ga. 263). To permit the rate of interest to be increased while the principal remains the same, does not foist a fictitious obligation upon the consolidated company. The holders of the Lake Shore collateral bonds had a security which satisfied them. They were asked to give up that security, and accept another. To induce consent to the substitution, the company agreed that the debt should remain the same, but that the rate of interest should be increased. The bonds stood for the same debt that they stood for from the beginning. Such a situation does not involve the mischief *Page 125 
which the statute was designed to cure. There was no more thought of prohibiting an increase of interest upon a readjustment of bonds than there was of prohibiting a preference in respect of dividends upon a readjustment of stock (Railroad Law, sec. 5, subd. 8). It makes no difference that the promise to pay interest is represented by coupons. Until detached and separately negotiated, a coupon is merely an incident of the bond without greater force that any other promise for the payment of interest (Williamsburgh Savings Bank v. Town of Solon, 136 N.Y. 465,481). It is argued that the difference between an increase of principal and an increase of interest is a difference of degree. But that is true of legal distinctions generally (Hudson CountyWater Co. v. McCarter, 209 U.S. 349, 355). When difference of degree marks a difference between a substantial peril and one that is merely fanciful, it becomes a safe ground work for decision.
We do not overlook the finding of the trial court that "a consideration received for the additional one-half per cent. interest promised on the new four per cent. mortgage bonds of the defendant railroad company is the consent to the consolidation given by the said holders of the Lake Shore Collaterals." The plaintiffs asked for a finding that this was "the sole consideration." The court found in effect that it was only part of the consideration. The finding on that subject is in reality a conclusion of law. The truth is that the bondholders gave much more than their consent to consolidation. They surrendered one security, and accepted another. The change of security made it necessary to refund the indebtedness, and the issue of bonds for that purpose is expressly authorized by statute (Railroad Law, sec. 142). The bonds being issued, their incidents may be varied. There is the same authority to change the rate of interest that there is to change the nature of the property covered by the mortgage. The thing that concerned the legislature was the underlying indebtedness, and not its incidents or accessories. *Page 126 
The argument is made that aside from the limitations of the Railroad Law, the increase of interest is unnecessary, and, therefore, wasteful. The trial court has found that the change from three and a half to four per cent. will involve an additional expenditure of $350,000 a year, but that "the savings consequent upon consolidation in the expense of operation, administration, accounting and taxes and in the cost of providing money for future capital requirements, will more than offset such increase in the amount of interest payment." This finding has been unanimously affirmed. There is nothing in the point that the companies should have gone ahead and merged without obtaining the consent of bondholders. The argument seems to be that the promise not to merge without the approval of seventy-five per cent. of the bondholders, was illegal under the laws of Illinois, where the Lake Shore and Michigan Southern Railway Company was organized. The laws of Illinois are not pleaded, and there is no charge in the complaint that the requirement of approval wasultra vires (Gordon Malting Co. v. Bartels Brewing Co.,206 N.Y. 528). The bondholders claimed in good faith that their consent was necessary, and even if it was not necessary, the surrender of a contested claim of right supplied a valuable consideration (Bandman v. Finn, 185 N.Y. 508, 515). But the argument that their approval was superfluous is without merit. There was no attempt by a stockholder to divide the general voting power with the bondholders. There was merely a promise not to vote for one specific measure by which the bondholders' security would have been transformed and perhaps destroyed. Such a promise is not illegal; and a court of equity will not condemn the stockholder who made it for loyalty to its terms.
The judgment should be affirmed, with costs.
WILLARD BARTLETT, Ch. J., CHASE, CUDDEBACK, SEABURY and POUND, JJ., concur; COLLIN, J., not sitting.
Judgment affirmed. *Page 127