13375

## LOTT v. BLACKWOOD, GOVERNOR, ET AL.

(164 S. E., 439)

*Mr. R. E. Whiting* for petitioner.

*Messrs. John M. Daniel, Attorney General, Cordie Page* and *J. Ivey Humphrey, Assistant Attorneys General,* for respondent.

March 28, 1932.

. The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

This action, in the original jurisdiction of this Court, relates to an Act of the General Assembly, approved by the Governor March 18, 1932, entitled "An Act to Provide for the Funding of Indebtedness Incurred for the Ordinary and Current Business of the State." That Act authorized the issue of "funding notes" of the State, for the purpose of funding or paying other notes of the State issued on or about March 30, 1931, under the terms of Act No. 132 of the year 1931 (37 St. at Large, 182) for money borrowed on the credit of the State for its ordinary and current business.

The petition, filed in the action by a resident taxpayer of the State, presents the question that the increase of State indebtedness, created because of the failure of the legislature to comply with the provisions of Section 2, Article 10, of the Constitution, was in such contravention of the constitutional provision, referred to, that the constitutionality of the proposed issue of notes is open to question, because of the manner in which the debt proposed to be funded has been created. The petition of the petitioner further states that, if the said notes are offered for sale before the right of their issuance is determined by this Court, the interests of the State and of the petitioner and all other taxpayers of the State will be caused serious and irreparable damage and injury, not only in respect to the high rates of interest likely to be charged to the State on the sale of the notes, but also in respect to the impairment of the credit of the State that will be caused if securities of the State of doubtful character and validity are permitted to be issued. The petitioner

asks this Court, if it should hold the proposed issue of notes, under the Act of 1932, invalid, for an injunction against their issuance.

So far as the facts necessary for a determination of the legal issues here involved are concerned, the petition and the return of the respondents, represented by the Attorney General of the State, are in accord. A brief statement of the essential facts is: The notes of the State issued in 1931 represented an accumulated indebtedness of several years' standing, increasing from $341,000.00 at the end of 1925 to nearly $5,000,000.00 in March, 1931. The operating deficit for 1926 was $1,827,000.00; for 1927, $1,570,000.00; for 1929, $700,000.00; and for 1930, $1,036,000.00. In only one year, 1928—when the revenues exceeded current expenses by about $591,000.00—were sufficient revenues provided and collected to pay the ordinary and current operating expenses of the State.

The provision of the Constitution before mentioned, the main one to be considered in determining the issues presented, is: "Expenses of State government.—The General Assembly shall provide for an annual tax sufficient to defray the estimated expenses of the State for each year, and whenever it shall happen that the ordinary expenses of the State for any year shall exceed the income of the State for such year the General Assembly shall provide for levying a tax for the ensuing year sufficient, with other sources of income, to pay the deficiency of the preceding year together with the estimated expenses of the ensuing year." Article 10, Section 2.

It cannot be doubted that the clear intendment of the constitutional provision was that a constitutional duty should rest upon the General Assembly to enact such adequate tax measures each year as to produce sufficient income for the State to pay its current expenses. It is equally clear that it was not contemplated or intended by the Constitution that indebtedness arising for money borrowed on the credit of

the State, for the ordinary and current business of the State, should be funded by notes or bonds so·as to increase the bonded indebtedness of the State. The deficit of approximately $5,000,000.00, which it is now necessary for the State to meet and provide for, either by bonds or otherwise, together with the resulting interest burden arising from that indebtedness, adds materially to the burden of State financing, and falls heavily upon the taxpayers at a time when it is somewhat difficult even to provide sufficient revenues to meet current expenses. The situation well illustrates, through a dearly bought experience, the wisdom of the requirement that adequate provision be made each year for the ordinary and current expenses of the State, so that such expenses may not result in a mortgage of the future.

In justice to the General Assemblies, responsible for the present conditions, it should be said, however, that the conditions for the last few years have been extremely abnormal; that there has been a serious deflation of tax values affecting the collections from taxable property; that in the adoption of indirect taxes, to prevent heavy taxes on real and personal property, it has been hard, if not impossible, to estimate with reasonable accuracy the revenues likely to be derived; that litigation has arisen, in some instances successful, which has prevented or delayed the collection of anticipated revenues from indirect sources; and that these and many other contributing factors, entering into the deficit, greatly increased the ordinary difficulties facing the legislature in providing revenue measures assuring sufficient returns to defray the estimated expenses of the State.

Irrespective, however, of the reason for failures of past legislatures to comply with constitutional duty, the consequences are the same. A valid debt has been created for which the State is responsible. The limitation of the Constitution placed on the power of the General Assembly to increase the public debt does not extend to debt

incurred for the ordinary and current business of the State (Section 11, Article 10, Const. 1895); nor is it forbidden by the Constitution to issue funding notes or bonds, if the funded indebtedness is valid in its inception (Section 7, Article 10, Const. 1895). See the case of *State ex rel. Ray v. Blease, Governor,* 95 S. C., 403, 79 S. E., 247, 254, where Mr. Justice Hydrick, delivering the opinion of the Supreme Court, said: "The refunding of a valid existing debt does not increase the debt of the State, and therefore needs not the sanction of the qualified electors, which is required by Section 11 of Article 10 of the Constitution before the public debt can be increased."

While the provision in Section 2 of Article 10 was designed to prevent the likelihood of an operating deficit from arising, we are, nevertheless, now confronted with the facts that the deficit exists, that the debts to be funded are valid and honest, and with the imperative need that they should be met without undue distress to the people of the State. The issue of notes extending the time of payment over a period of years, backed by the levy of an annual tax sufficient to meet the payments, is not a forbidden exercise of legislative power within any express provision of the Constitution; and, by many decisions of this Court, the principle is well established that the powers of the General Assembly are plenary, as to all matters of legislation, unless limited by some provision of the State Constitution. *Waterloo School District v. Cross Hill School District,* 106 S. C., 292, 91 S. E., 257. See, also, *Scroggie v. Scarborough,* 162 S. C., 221, 160 S. E., 596.

The indebtedness of the State represented by the notes issued on March 30, 1931, is valid, and the Act authorizing the funding notes to be issued for the purpose of funding or paying said debt must likewise be adjudged valid. No reason appears, therefore, for this Court to interfere with the issuance and sale of the notes proposed under the Act

of March 18, 1932, and, accordingly, the petition is dismissed.

MESSRS. JUSTICES STABLER, CARTER and BONHAM concur.