14107

WILLIAMS v. CITY OF ROCK HILL *ET AL.*

(180 S. E., 799)

*Mr. William M. Wilson,* for petitioner,

*Messrs. Reed, Hoyt '& Washburn* and *Spencer & White,* for respondents,

July 12, 1935.

The opinion of the Court was delivered by MR. CHIEF JUSTICE STABLER.

The City of Rock Hill, a municipal corporation, has outstanding five per cent. municipal bonds in the sum of $335,000.00. These bonds, to the amount of $285,000.00, are dated January 1, 1911, and payable January 1, 1951, and, in the sum of $50,000.00, dated January 1, 1913, and payable January 1, 1953. They were all issued under the authority of Sections 2008 and 2011 of the Civil Code of 1902, now appearing as Sections 7280 and 7284 of the Code of 1932, for the construction of the city's water supply system, its lighting system, and its sewerage system. A sinking fund was provided for by ordinance at the time of their issuance, but no levy of taxes for such fund has ever been made, and in fact no such fund exists.

By their terms, these bonds are now subject to call for redemption by the city; and the respondents propose to ex-

ercise the privilege of calling them at this time, and to issue, under an Act passed by the Legislature at its 1935 session, refunding bonds in the like amount of $335,000.00, as follows: $200,000.00 at 4½ per cent., $100,000.00 at 4¼ per cent., and $35,000.00 at 4 per cent., payable $15,000.00 every year for 21 years, commencing January 1, 1944, with a final payment of $20,000.00 on January 1, 1965, without privilege of redemption at an earlier date.

Proceeding under the authority conferred by the Act of 1935 (39 St. at Large, p. 1176), the respondents have contracted to sell the refunding bonds at their par value and a premium of $2,010.00; the contract of sale having been made privately, without competitive bidding. Unless required to do so, the city does not intend to submit the question of the issuance of these bonds to a vote of its qualified electors, but to issue and sell them under the terms of the contract already made. If the bonds now outstanding are not called for redemption, there will be paid on them as interest by their maturity the aggregate sum of $264,625.00; if the proposed refunding bonds are issued, there will be paid on them as interest by their maturity the aggregate sum of $287,637.50.

The petitioner, a citizen and taxpayer of the City of Rock Hill, is asking in this proceeding, instituted in the original jurisdiction of the Court, that the Act of 1935 and Sections 7319 and 7320 of the Code of 1932 be declared unconstitutional; that the respondents be restrained from issuing the refunding bonds unless the question of their issuance is first submitted to the qualified electors of the city and unless a majority of the electors voting on the question shall vote in favor thereof; and that a private sale of such bonds by the respondents, without competitive bidding after publication of the notice of such proposed sale, be declared contrary to public policy and void, and be restrained.

On the verified petition, a rule was issued by a member of this Court directing the respondents to show cause, if any

they had, why the relief prayed for should not be granted. Due return was made to the rule, and the matter was heard by the Court at its last term and submitted for consideration and decision.

Counsel for the petitioner argues, in the first place, ██ that the issuance of the proposed refunding bonds, without first submitting the question to the qualified electors of the City of Rock Hill and without obtaining the approval of a majority of such electors voting on the question, is in violation of Section 7 of Article 8 of the Constitution of South Carolina, as the debt to be refunded did not exist at the time of the adoption of the Constitution.

We quote here the following provisions of the above-named section: "No city or town in this State shall hereafter incur any bonded debt which, including existing bonded indebtedness, shall exceed eight per centum of the assessed value of the taxable property therein, and no such debt shall be created without submitting the question as to the creation thereof to the qualified electors of such city or town, as provided in this Constitution for such special elections; and unless a majority of such electors voting on the question shall be in favor of creating such further bonded debt, none shall be created. * * * Nothing herein contained shall prevent the issuing of bonds to an amount sufficient to refund bonded indebtedness existing at the time of the adoption of this Constitution."

With regard to pertinent statutory provisions, every city in South Carolina is authorized by Section 7319 of the Code of 1932 to issue bonds to refund any part or all of its bonded indebtedness, "whether the same has matured or not," provided the aggregate amount of the principal of the refunding bonds does not exceed the aggregate amount of the bonded indebtedness refunded. Section 7320 especially provides that such bonds may be issued without submitting the question of their issuance to the qualified electors of the city. In addition thereto, as above indicated, the Act of 1935

(39 St. at Large, p. 1178.), specifically authorizes the City of Rock Hill to issue the refunding bonds in question, and provides that the "powers granted by this Act are granted in addition to and not in substitution for the existing powers of said city" (Section 8), and confers upon the city council the power to issue such bonds without the approval of the qualified electors of the municipality. It seems clear, therefore, that the city has ample authority to issue the proposed refunding bonds, unless the statutes referred to violate, as contended by the petitioner, some provision of the Constitution.

While it seems that the question here raised has not been passed upon by this Court, the following decisions, we think, tend to support the position of the respondents: *Robertson v. Tillman,* 39 S. C., 298, 17 S. E., 678; *McCreight v. City of Camden,* 49 S. C., 78, 26 S. E., 984; *Jordan v. City of Greenville,* 79 S. C., 436, 60 S. E., 973; *State v. Blease,* 95 S. C., 403, 79 S. E., 247, 254; *Lott v. Blackwood,* 166 S. C., 58, 164 S. E., 439.

The principle established by these decisions is thus stated by Mr. Justice Hydrick in *State v. Blease, supra,* and quoted with approval in the recent case of *Lott v. Blackwood,* cited above: "The refunding of a valid existing debt does not increase the debt of the State, and therefore needs not the sanction of the qualified electors, which is required by Section 11 of Article 10 of the Constitution before the public debt can be increased."

It is true that the Court had no occasion in these cases to consider the provisions of Section 7 of Article 8 of the Constitution, but was concerned only with Section 11 of Article 10, which forbids the General Assembly "to create any further debt or obligation" of the State "without first submitting the question as to the creation of such new debt * * * to the qualified electors" thereof. These provisions of the Constitution, however, are clearly so similar in terms and effect to those of Section 7 of Article 8, that it is

difficult to draw any distinction in meaning. If the issuance by the State of bonds to fund or refund a valid existing indebtedness does not create any debt within the meaning of Section 11 of Article 10, it would seem to logically follow that the issuance of bonds by a town or city to fund or refund valid outstanding bonds does not create any bonded indebtedness within the meaning of Section 7 of Article 8.

In 44 C. J., 1132, we find, as stating the general rule: "A municipal corporation does not incur a new debt or increase its indebtedness, within the meaning of constitutional or statutory limitations, when it * * * funds or extends an existing indebtedness, as by issuing funding bonds." Also, at page 1189 of the same volume, the following appears: "As is stated elsewhere in this article, bonds which are issued to fund a valid indebtedness do not create any new debt or increase the debt of the municipality within the meaning of limitations of the amount of municipal indebtedness generally."

In McQuillin on Municipal Corporations, Volume 6, at page 43, the writer says: "In determining what constitutes an indebtedness, where a municipality has reached its debt limit, or is so near the limit that the proposed act, if construed as the incurring of an indebtedness, will exceed such limit, it is held in a long line of decisions that a municipality does not incur any new indebtedness by funding or refunding existing indebtedness, and hence that funding or refunding bonds are not within the constitutional prohibition, but may be issued although the municipal debt limit has been already reached or exceeded."

In a note to *Hagan v. Commissioners' Court,* found in 37 L. R. A. (N. S.), 1099, the following statement is made: "The question whether refunding bonds increase the debt of a State or municipality, within the meaning of debt limit provisions, has produced some conflict in the decisions, but the general disposition of the courts has been to hold that they do not, the result of a refunding issue being declared

merely to change the form of an existing indebtedness. All of the courts hold that the exchange of the new obligations for the old does not add to the existing debt."

See, also, *Bolich v. City of Winston-Salem,* 202 N. C., 786; 164 S. E., 361; *Hickey v. Nampa,* 22 Idaho, 41, 124 P., 280; *State v. Weinrich,* 291 Mo., 461, 236 S. W., 872; *Parker v. Butte,* 58 Mont., 531, 193 P., 748, and *Beard v. City of Hopkinsville,* 95 Ky., 239, 24 S. W., 872, 23 L. R. A., 402, 44 Am. St. Rep., 222.

The petitioner contends, however, that our decisions construing Section 11 of Article 10 of the Constitution are not in point, because Section 7 of Article 8 contains a provision which does not appear in Section 11 of Article 10, to wit: "Nothing herein contained shall prevent the issuing of bonds to an amount sufficient to refund bonded indebtedness existing at the time of the adoption of this Constitution." It is earnestly argued that the conclusion is inescapable that if the framers of the Constitution had intended to authorize the issuance of refunding bonds to fund an indebtedness arising thereafter, without a vote of the electors authorizing it, they would have expressly said so, and would not have limited, by clear inference, the issuance of such bonds to "indebtedness existing at the time of the adoption of this Constitution."

We do not agree with the petitioner. While his argument is strong and persuasive, we think the construction contended for is unsound. Section 7 of Article 8 only sets up a limitation; the right and power of the city to borrow money and issue bonds being derived from legislative action solely. We think it is clear, in providing that "nothing herein contained shall prevent the issuing of bonds to an amount sufficient to refund bonded indebtedness existing at the time of the adoption of this Constitution," the framers of that document intended to exclude the refunding bonds from the operation of the debt limit imposed by the opening sentence of Section 7, which reads as follows: "No city or town in this State shall hereafter incur any bonded debt which, including

existing bonded indebtedness, shall exceed eight per centum of the assessed value of the taxable property therein." This provision is the only one of Section 7 which could be deemed to prevent a town or city from issuing bonds. It seems that the meaning to be given the provision in question is clear when it is read with the similar provision of Section 5 of Article 10 of the Constitution, which is worded as follows: "Nothing herein shall prevent the issue of bonds for the purpose of paying or refunding any valid municipal debt heretofore contracted in excess of eight per centum of the assessed value of all the taxable property" in the issuing municipality. This section of Article 10 also deals with the amount of bonded debt which may be incurred by any town or city and, logically, any provision saving the power to refund existing indebtedness which it was deemed necessary to include in this proviso was also included in Section 7 of Article 8.

Nor do we think, as contended, that the requirement in Section 7 of Article 8, that any city or town "shall on the issuing of such bonds create a sinking fund for the redemption thereof at maturity," indicates an intent that bonds issued after the adoption of the present Constitution should not be refunded. Doubtless this clause was inserted to prevent the thoughtless incurring of debt without making provision for its ultimate payment. There is nothing in the fundamental law which indicates that the plan adopted for the retirement of the outstanding bonds may not be changed subsequently to their issuance, provided it were possible to retire them. Of course, where new bonds are issued to retire outstanding ones, further provision for the creation of a sinking fund must be made prior to the issuance of the refunding bonds. In any case, there will be full compliance with the constitutional provision.

> In the second place, the petitioner urges that the aggregate excess interest, amounting to $23,012.50, which the city, under its contract in regard to the

proposed refunding bonds, will be required to pay, is the creation of a new debt to that extent, and is such a one as is provided against by Section 7 of Article 8 of the Constitution, without first being submitted to the qualified electors of such city.

In 44 C. J., 1186, it is stated that: "Power to issue renewal or refunding bonds does not result merely because of the existence of municipal indebtedness; but a municipality may, when duly authorized by the Legislature, issue its bonds to fund or refund its indebtedness, it being unquestionably within the power of the Legislature to grant such authority." And at page 1188 of the same volume: "Interest to accrue is not included in computing the amount of bonds which may be issued."

In McQuillin on Municipal Corporations, Volume 6, at page 42, it is said: "Interest is not a debt, within the meaning of debt limit provisions, until it is earned and becomes due. And in determining whether an indebtedness will be created in excess of the debt limit, unearned interest cannot be added to the principal. The authority granted by the constitution or statute to contract a debt refers to the amount of the debt at the date at which it is created, and has no reference to the amounts of interest which accrue thereafter. On the other hand, interest which has become due and payable is a part of the existing indebtedness, in figuring the total of municipal indebtedness."

In *Carlson v. City of Helena,* 39 Mont., 82, 102 P., 39, 44, 17 Ann. Cas., 1233, the Supreme Court of Montana observed: "Interest is merely an incident to the debt, to be paid from time to time or at the date when the principal falls due, in consideration of the forbearance extended to the debtor, and becomes a part of the debt, or a debt at all, only when it has been earned. If this is not the correct rule, then, as observed by the Supreme Court of Wisconsin in *Herman v. City of Oconto,* 110 Wis., 660, 86 N. W., 681, 'most of

the cases in the books relating to the ascertainment of municipal indebtedness have been wrongly decided.'"

In *Continental Securities Company v. Railway Company,* 217 N. Y., 119, 111 N. E., 484, 486, the Court held that "unearned interest to become due in the future is not a debt." And in *City of Ashland v. Culbertson,* 103 Ky., 161, 44 S. W., 441, 442, the Supreme Court of that state declared that "the term 'indebtedness,' as used in the constitution, was not intended, as we think, to include future interest. The lawmakers were not looking at this incident of the indebtedness, but to the indebtedness proper."

While it is true, as pointed out by the petitioner, that the aggregate amount of all interest which must be paid by the city prior to the retirement of the refunding bonds will be in excess of the aggregate amount which the city will be called upon to pay by way of interest if the outstanding bonds are not refunded, it is not denied that the city is effecting a saving by the exercise of its right to call the present outstanding bonds, all of which bear interest at five per cent., and to refund them with bonds bearing interest at a less per cent.; such net saving within the life of the outstanding bonds being about $34,000.00. But aside from that, as interest "becomes a part of the debt, or a debt at all, only when it has been earned," we do not think it may soundly be held that the accumulation of unearned interest as the result of extended maturities, is the creation of a new indebtedness, as is here contended. This view would seem to be in accord with authority generally, and with a proper construction of pertinent provisions of our Constitution and statutes. We are, therefore, of opinion that the aggregate excess of such unearned interest creates no new debt of the municipality, and should be given no legal weight or consideration in determining the amount of bonded indebtedness sought to be refunded. See the decisions of this Court above cited, which tend to support the view of the respondents.

Finally, the petitioner submits that the action of the city council, in attempting to make a private sale of the bonds without competitive bidding, is contrary to public policy, and is illegal and void.

We are not in accord with this position. The Act of 1935 (Section 5), provides that the proposed refunding bonds "shall be sold by said city council in such manner as said city council may deem advisable, at not less than par and accrued interest"; and also declares that the powers thereby conferred, "except as herein otherwise provided, are not subject to any limitation or restriction prescribed by any other law." Section 8.

In *O'Neill v. Yellowstone Irr. District,* 44 Mont., 492, 493, 121 P., 283, 290, it was said: "It is the general rule that, when a municipality is given authority to issue and sell its bonds, it must observe the restrictions, if any, as to the mode by which, and the terms upon which, they may be sold. But when the power is granted without restriction, the authorities of the municipality are left free to dispose of them at such prices as they can obtain. They have the implied power to agree upon the terms of sale."

In discussing the same question in *Washington-Oregon Corporation v. City of Chehalis,* 76 Wash., 442, 136 P., 681, 683, the Court held: "If the statute required the bonds to be sold in any particular manner, no sale, unless in the manner provided in the statute, would be valid. But our statute contains no requirement of this character. It provides only for the sale of the bonds in such manner as the corporate authorities shall deem best, thus vesting in them a discretion as to the method of sale or disposal."

In the case at bar, the Legislature, as indicated, did not see fit to prescribe the manner in which the bonds in question should be sold, as undoubtedly it could have done; but it vested the city council, as it had authority to do, with power and discretion to dispose of them as to the council might seem best. The wisdom of such action on the part of the

General Assembly being a legislative question, will not be inquired into by the Court. See *Brown v. Tharpe,* 74 S. C.; 207, 54 S. E., 363. The contention of the petitioner has no support in authority, and is without merit.

Upon full consideration of the several issues involved in this proceeding, we are of opinion, and so hold: (1) That Sections 7319 and 7320 of the Code of 1932 and the Act of 1935 herein referred to do not violate or contravene any provision of the Constitution; and (2) that the proposed refunding bonds when issued and sold will constitute valid and binding obligations of the City of Rock Hill.

The judgment, therefore, of the Court is that the permanent injunction prayed for be denied and the petition dismissed; and it is so ordered.

MESSRS. JUSTICES CARTER, BONHAM, BAKER and FISHBURNE concur.