[Civ. No. 23581. Second Dist., Div. Three. Jan. 19, 1959.]

THE METROPOLITAN WATER DISTRICT OF SOUTHERN CALIFORNIA (a Corporation), Petitioner, v. FRED A. HEILBRON, as Secretary of the Board of Directors, etc., Respondent.

Charles C. Cooper, Jr., Donald M. Keith, William A. Parsons, O'Melveny & Myers, James L. Beebe and James W. Beebe for Petitioner.

Robert H. Dunlap for Respondent.

PATROSSO, J. pro tem.*—This is an original proceeding in mandate instituted by the Metropolitan Water District of Southern California, hereinafter referred to as the "district," against the respondent, the secretary of its board of directors, to compel the latter to publish a notice inviting proposals for an issue of $26,400,000 waterworks bonds, series 4, authorized by an ordinance and a resolution adopted by the district's board of directors. The respondent has made return by general demurrer.

The district is a public corporation organized under the statute known as the "Metropolitan Water District Act" (Stats. 1927, ch. 429, p. 694) and amendments thereto, hereinafter referred to as the "Act." On June 5, 1956, a special election was held in the district pursuant to the provisions of section 7.3 of the Act for the purpose of submitting to the qualified voters of the district a proposal, substantially in the language set forth in said section 7.3, authorizing the district to incur indebtedness from time to time for the purpose of constructing or installing additional works or facilities for development, transportation and distribution of water. At said election more than a majority of the qualified voters of the district voting on such proposal at said election voted in favor thereof.

Pursuant to such authorization and in accordance with sections 7.2 (Stats. 1955, ch. 1400, p. 2513) and 7.3 (Stats. 1957, ch. 1, p. 277) the district prior to October 28, 1958, issued three series of bonds aggregating in principal amount $51,-000,000 of which an amount of $48,250,000 will remain outstanding and unpaid on April 1, 1959.

On October 28, 1958, pursuant to said authorization and in accordance with sections 7.2 and 7.3 of the Act the district's

*Assigned by Chairman of Judicial Council.

board of directors duly adopted ordinance Number 93 authorizing the issuance of $26,400,000 waterworks bonds, series 4, said bonds to be dated April 1, 1959, and payable in 12 equal annual installments commencing April 1, 1960, with interest at a rate to be fixed upon the sale thereof but not to exceed 4½ per cent per annum. By said resolution its secretary, respondent herein, was directed to publish notice inviting sealed proposals for said series 4 bonds. The respondent has refused to publish such notice upon the asserted ground that the ordinance and resolution purporting to authorize the issuance and sale of said bonds are invalid.

█ Mandamus is an appropriate remedy to compel respondent to publish the notice inviting proposals for the bonds in question if the proposed issue meets the requirement of law because the action demanded is ministerial. (*City of Los Angeles* v. *Offner* (1942), 19 Cal.2d 483 [122 P.2d 14, 145 A.L.R. 1358]; *City of Oxnard* v. *Dale* (1955), 45 Cal.2d 729, 731 [290 P.2d 859].)

The basic question presented is whether or not the series 4 bonds hereinabove referred to will, when added to the other three series of bonds heretofore issued, create an indebtedness in excess of the statutory debt limitation set forth in section 7.2, subd. (a) of the Act as amended, to the effect that "such indebtedness so incurred outstanding at any time shall not exceed fifty (50) per cent of the aggregate amount of special taxes thereafter to be levied by the District pursuant to the authority of section 9."

If the principal or face amount of the bonds constitutes the "indebtedness," as this word is used in the statute, the district is entitled to the relief sought, as the aggregate of all bonds including series 4 will be $74,650,000 and the special taxes to be levied by the district pursuant to section 9 of the Act from and after April 1, 1959, will be $153,623,000. If, however, the interest to accrue on such bonds must be included in "such indebtedness" as well as the principal, the debt limitation will be exceeded as to all fiscal years from 1963-1964 to and including 1970-1971.

The question as to whether the word "indebtedness" as used in constitutional and statutory debt limitation provisions includes or excludes interest to accrue on bonds has never been passed upon by the courts of this state. However, the overwhelming authority elsewhere is to the effect that the word does not include interest to accrue on the bonds. The rationale of the authorities so declaring is well summarized in an annota-

tion in 100 American Law Reports 610, as follows: "The interpretation given to the words 'debt,' or 'indebtedness,' as used in constitutional or statutory provisions governing the limitation of the amount to which a city may become indebted, may be said to be the deciding factor in determining whether interest on its indebtedness is to be considered as a part of the total indebtedness of a municipality.

"Nearly all jurisdictions incline toward the view expressed by the court in *Epping* v. *Columbus* (1903), 117 Ga. 263, 43 S.E. 803, that the word 'debt,' when appearing in a constitution, is to be taken in its ordinary, natural, common-sense, popular meaning, unless the context requires that it should be treated as used in a technical sense. 'If a person unversed in the technical niceties of the law is asked what is the amount of his debts, his answer to the question in every instance would be an amount which would represent the present liability that he was under at the moment the question was answered. A farmer who had been so unfortunate as to be compelled to place a long loan upon his farm, if asked what was the amount of the debt upon his farm, would unhesitatingly answer by giving an amount which would represent the principal of the debt and any interest that was past due and payable at the time the inquiry was made. One who, in making a return of his property for taxation, is required to state to the tax receiver the amount of solvent debts due him, would not, in the case of a perfectly solvent debt, consider that he was under a moral obligation to return for taxation the value of the debt at any higher amount than one which would represent the principal and any interest that was past due at the time the return was made. It is useless to multiply illustrations. The "debt" of an individual or a corporation or the public, in its usual and popular sense, means the amount for which the individual or corporation or the public would be presently liable if called upon to discharge the obligation. The law deals at all points with the man of ordinary prudence and average capacity as the standard, for the simple reason that communities and commonwealths are made up of persons of this class.' "[1]

---

[1]Accord: *O'Rear* v. *Sartain*, 193 Ala. 275 [69 So. 554, Ann.Cas. 1918B 593]; *Epping* v. *City of Columbus*, 117 Ga. 263 [43 S.E. 803]; *People ex rel. Lindheimer* v. *Hamilton*, 373 Ill. 124 [25 N.E.2d 517]; *Goodwine* v. *Vermilion County*, 271 Ill. 126 [110 N.E. 890]; *Stone* v. *City of Chicago*, 207 Ill. 492 [69 N.E. 970]; *Brown* v. *Guthrie*, 185 Ind. 669 [114 N.E. 443]; *Pennington* v. *Town of Sumner*, 222 Iowa 1005 [270 N.W.

194

■ We find nothing in the language of the debt limitation provisions of the statute here to suggest a different result. On the contrary, an examination of the pertinent provisions thereof but serves to confirm the conclusion that the word "indebtedness" as used therein refers to the amount of the debt created by the issuance of bonds and has no reference to the amount of interest which will thereafter accrue thereon.

Section 7.2, subd. (a) which contains the debt limitation provision reads in part as follows: "Sec. 7.2(a) Whenever the board of directors, by ordinance adopted by a vote of three-fourths of the total vote of the board, shall find . . . that public interest requires the incurring of *indebtedness* for the purpose of providing moneys for the construction or installation of such additional works or facilities, such board of directors may authorize the incurring of *such indebtedness* and may authorize the issuance and sale of notes or other evidence of *indebtedness* for such purpose either in one block or in installments; provided, however, that all *such indebtedness* so incurred shall be subject to the following limitations: (1) *such indebtedness* so incurred outstanding at any time shall not exceed fifty (50) percent of the aggregate amount of special taxes thereafter to be levied by the district pursuant to the authority of Section 9 hereof and annexation proceedings concluded thereunder, or one (1) percent of the assessed valuation of property within the district taxable for district purposes, whichever shall be the lesser; (2) the interest payable on *such indebtedness* shall not exceed six (6) percent per annum payable semiannually; (3) the term of *such indebtedness* shall not exceed twelve (12) years; and (4) the whole amount of *such indebtedness* or of the respective installment thereof, depending upon whether the notes or other evidence of *such indebtedness* shall be issued in one block or in installments, shall be made payable in substantially equal annual parts during the term of *such indebtedness* or installment thereof, as the case may be . . . The proceeds of any borrowing hereunder (other

629]; *City of Ashland* v. *Culbertson*, 103 Ky. 161 [44 S.W. 441]; *Finlayson* v. *Vaughn*, 54 Minn. 331 [56 N.W. 49]; *Carlson* v. *City of Helena*, 39 Mont. 82 [102 P. 39, 17 Ann.Cas. 1233]; *Schieber* v. *City of Mohall*, 66 N.D. 593 [268 N.W. 445]; *Pennsylvania Power & Light Co.* v. *City of Bethlehem*, 323 Pa. 313 [185 A. 710]; *Williams* v. *City of Rock Hill*, 177 S.C. 82 [180 S.E. 799, 100 A.L.R. 604]; *Herman* v. *City of Oconto*, 110 Wis. 660 [86 N.W. 681]; 100 A.L.R. 610; 15 McQuillin Municipal Corporations 3d ed. 359; contra: *Coulson* v. *Portland*, 6 F. Cas. 629 No. 3275; *Bateman* v. *Board of Commrs. of Clarendon Imp. Dist. No. 1*, 102 Ark. 306 [143 S.W. 1062].

than accrued interest) shall be applied solely to the purpose specified in the ordinance authorizing the incurring of *such indebtedness* or to the retirement of the principal of the obligation issued pursuant to such ordinance. Any accrued interest received shall be applied to payment of interest on *such indebtedness.*'' (Italics ours.)

A reading of the foregoing provision discloses that it contains several distinct limitations, some applicable to the ''indebtedness'' and others relating to the interest payable thereon which clearly suggests that ''indebtedness'' has reference only to the principal of the debt created by the bonds issued pursuant to the authority therein conferred upon the district.

Further confirmation of the correctness of this conclusion is found in section 7.2, subd. (c) relating to the tax to be levied for the purpose of servicing the bonds which in part reads as follows: ''(c) . . . the board of directors shall, at the time of fixing the tax levy and in the manner for such tax levy provided, levy and collect annually until *such indebtedness* shall be paid or until there shall be a sum in the treasury of the district set apart for that purpose, sufficient to meet all sums coming due for principal and interest thereon, a tax sufficient *to pay the interest on such indebtedness,* or such part thereof as shall not be met from other income and revenues of the district, as such interest becomes due, and also sufficient to pay such part of the *principal thereof* as shall become due before the time when money will be available from the next general tax levy, or *such portion thereof* as shall not be met from other income and revenues of the district. The taxes herein required to be levied and collected shall be in addition to all other taxes levied for district purposes, shall not be limited by the provisions of Section 5, subdivision (8) hereof and shall be collected at the time and in the same manner as other district taxes are collected and shall be used for no purpose other *than the payment of such indebtedness and interest accruing thereon.*'' (Italics ours.)

Inasmuch as the district is required to levy a tax for the payment of the indebtedness and also for the interest thereon it is evident that the former does not include the latter. Apposite, here, is the following quotation from *Wright* v. *Stapp-Zoe Consol. School Dist. No. 1* (1942), 190 Okla. 289 [123 P.2d 281, 283] : ''Plaintiffs' third contention raises the question of whether interest on the bonds to be issued may be considered in determining whether the issue exceeds the 5 per cent debt limit specified in section 26, article 10 of the state constitu-

tion, O.S. 1941. Plaintiffs contend that interest must be computed and added to the principal of the proposed bonds in figuring the amount of the debt. No case so holding is cited, and we know of none. The law is to the contrary. (Citations.)

"That such is the proper construction of section 26, article 10 is apparent from a reading of the section. After using the term 'indebtedness' it provides for the collection of a sufficient tax annually to 'pay the interest on such indebtedness as it falls due' and for a sinking fund for the payment of the principal thereof. This clearly indicates that by the term 'indebtedness' was meant only the amount of the indebtedness at the date it was contracted, and interest thereon to accrue in the future was not included."

We see nothing in *Provident etc. Assn.* v. *Davis,* 143 Cal. 253 [76 P. 1034], cited by respondent, which would support the conclusion that the word "indebtedness" includes interest to accrue thereon in the future. The sole question there was whether a counterclaim pleaded by the defendant which merely alleged that at the date of the filing of the plaintiff's action the latter was indebted to him in a certain sum stated a cause of action. The language quoted from the opinion by respondent was used by the court in support of its conclusion that the pleading was insufficient because it failed to allege as then required by Code of Civil Procedure, section 438, that the claimed indebtedness was due at the time of the filing of the plaintiff's complaint; the court observing that one may be indebted and yet not obligated to pay because the time for payment had not arrived. This, however, does not suggest that the word "indebtedness" refers to both the amount of the principal of a debt and the interest to accrue thereon in the future. Moreover, as said in *Blair* v. *Laton City Corporation* (1957), 6 Utah 2d 138 [307 P.2d 895, 901] : "[T]he terms 'debt' and 'indebtedness' as used in constitutional debt limitations of municipalities is [sic] 'given a meaning much less broad and comprehensive than it bears in general usage.' "

Having concluded that the word "indebtedness" does not include interest to accrue thereon in the future, the bonds proposed to be issued by the petitioner do not violate the debt limitation of the statute and it is the duty of the respondent to publish the notice inviting proposals therefor.

Let a peremptory writ issue as prayed for.

Shinn, P. J., and Wood (Parker), J., concurred.