[File No. 6399.]

OSCAR A. SCHIEBER, Respondent, v. CITY OF MOHALL, a Municipal Corporation, and E. G. Auth, as Mayor of Said City, and C. Cassidy, John Hanson, Guy H. Rierson, and A. F. Page, as the City Council of the City of Mohall, North Dakota, and J. H. Foster, as City Auditor of Said City, and R. M. Rockne, as City Treasurer of Said City, and W. E. Coutts, the County Auditor of Renville County, in the State of North Dakota, and Neil McLaughlin and Charles Lang, Co-partners Doing Business as McLaughlin, Lang & Company, Appellants.

(268 N. W. 445.)

Opinion filed June 20, 1936. Rehearing denied July 15, 1936.

*Peter B. Garberg* (*Hugh H. Barber* of the firm *Junell, Driscoll, Fletcher, Dorsey & Barker* of counsel), for appellants.

*Sullivan, Fleck & Sullivan (H. C. Young* of counsel) for respondent.

598

*Howard G. Fuller, C. L. Foster, Harold P. Thompson, Matthew Murphy, William C. Cull, Henry G. Owen, Aloys Wartner,* and *R. F. Rinker,* as amici curiæ.

BURR, J. According to the complaint:

"The City of Mohall created a sewer district and a watermain district for the City—each district covering the incorporated limits. Improvement warrants were issued, and the sum of $29,325.00 remains unpaid, all past due except the sum of $550.00. All that can be realized from the balance of the assessment does not exceed the sum of $2,500.00. Nothing 'can ever become available to said fund to apply on the principal of said warrants or any part of them.' The warrants for the water system amounted to $34,500.00. Judgment was entered against the City in the United States District Court on these warrants, and with the accumulated interest amounts to $56,612.12. Additional watermain warrants were issued which became past due and another judgment was entered against the City in the United States District Court, which with accumulated interest now amounts to $48,721.84.

"Additional improvement warrants against the sewer district were issued and there remains unpaid thereon with interest the additional amount of $40,000.00 and there is practically no assessment uncollected or remaining to be applied thereon. The City issued its refunding waterworks bonds in the sum of $5,000.00, which bonds are valid obligations of the City of Mohall. The total indebtedness, with interest, amounts to $179,658.96. The deficiencies in the special assessments are 'due to the non-payment of taxes assessed against said properties, the sales thereof for general tax liens, the failure to redeem therefrom, the title to said properties by virtue of the failure to redeem being fixed in the county and the very great depreciation in the value of the property.' The sewer warrants were issued prior to September 7, 1916; the refunding bonds were issued September 1, 1917; the watermain warrants prior to June 15, 1918; and the judgments were entered in 1932. The total assessed valuations of the City of Mohall for the periods involved are as follows: in 1916, $121,443.00; in 1917, $167,438.00; in 1918, $161,145.00; in 1931, $370,268.00; in 1932,

$234,883.00; in 1933, $238,142.00; and in 1934, $234,483.00. The total limit of obligations permitted the City under the Constitution of the State for constructing or purchasing sewers or waterworks is set forth and all sums to be assumed by the City in excess thereof are claimed to be absolutely null and void. The defendants are intending to proceed under the provisions of chapter 206 of the Laws of 1935 and will issue the general obligation bonds of the City in the sum of $88,700.00 and levy a general tax against all the taxable property under a compromise agreement with the holders of the obligations. If they may not issue bonds under the provisions of that chapter, they will issue refunding special improvement warrants under the provisions of Chapter 207 of the Laws of 1935 and obligate the City to levy a general tax against all the taxable property for the payment of the deficiency in the special improvement funds. These warrants are to mature in twenty years with interest at five per cent. If this may not be done, then, under the provisions of chapter 196 of the Laws of 1935, the defendants will issue bonds to refund the judgments under a compromise agreement whereby the judgment creditors have agreed to take fifty per cent. of the amount of the judgment and these bonds will run for twenty-five years, bearing interest at five per cent., and the defendants threaten to levy a direct and irrepealable tax on the taxable property of the City to pay these bonds as they come due. The plaintiff seeks a restraining order enjoining the defendants from carrying out this plan and purpose."

The defendants demurred on the ground that the complaint does not state facts sufficient to constitute a cause of action. The trial court overruled the demurrer and the defendants appeal.

Much is said about economic conditions, municipal bankruptcy, and ability to pay. These questions are not involved here except as they may throw light on the purpose of the 1935 legislation involved. What concerns us is the interpretation of the Constitution of the State and the legislation enacted thereunder conferring power upon municipalities. It is a commonplace and oft repeated statement that the courts cannot inquire into the wisdom of legislation. They determine merely whether the legislation involved is prohibited by the Constitution of the state or of the United States.

In order to avoid confusion it is sufficient to state it is admitted that

all legal requirements for the issuance of the improvement warrants were followed. The warrants issued are expressly made payable "out of any money in Sewer District Number One Fund" and "Watermain District Number One Fund" respectively and show on their face they were issued pursuant to the law governing the issuing of improvement warrants. ". . . No question arises as to the legality of the obligations represented by the warrants, whatever that obligation may be." Neither is there any claim made that the city was in any way negligent with reference to the assessments and collection of taxes so as to bring it under the rule set forth in Grand Lodge, A. O. U. W. v. Bottineau, 58 N. D. 740, 227 N. W. 363.

Appellant says: "This case raises the question as to what rights, powers, and duties a city has for the disposition of its special improvement district warrants, issued in anticipation of the collection of special assessments, when the assessments fail to produce a sum sufficient to pay the warrants."

In other words, the question is whether the city is legally indebted to the warrant holders for the whole or any part of the deficit referred to.

There are several provisions of our State Constitution involved. Section 130 provides: "The legislative assembly shall provide by general law for the organization of municipal corporations, restricting their powers as to levying taxes and assessments, borrowing money and contracting debts, and money raised by taxation, loan or assessment for any purpose shall not be diverted to any other purpose except by authority of law."

Section 183 provides: "The debt of any . . . City . . . shall never exceed five per centum upon the assessed value of the taxable property therein; provided that any incorporated city may, by a two-thirds vote, increase such indebtedness three per centum on such assessed value beyond said five per centum limit. . . . In estimating the indebtedness which a city . . . may incur the entire amount, exclusive of the bonds upon said revenue producing utilities, whether contracted prior or subsequent to the adoption of this constitution, shall be included; provided, further, that any incorporated city may become indebted in any amount not exceeding four per centum of such assessed value without regard to the existing indebtedness of such city for the

purpose of constructing or purchasing waterworks or furnishing a supply of water to the inhabitants of such city or for the purpose of constructing sewers, and for no other purpose whatever. All bonds and obligations in excess of the amount of indebtedness permitted by this constitution given by any city . . . shall be void."

Section 184 provides: "Any city . . . incurring indebtedness shall at or before the time of so doing provide for the collection of an annual tax sufficient to pay the interest and also the principal thereof when due, and all laws or ordinances providing for the payment of the interest or principal of any debt shall be irrepealable until such debt be paid."

The term "debt" as used in the constitutional provision must be understood in its common and ordinary acceptance of the term. As said in Almond v. Mobley, 40 Ga. App. 305, 149 S. E. 293, debt of the public in its usual and popular sense means the amount for which the public would be presently liable if called upon to discharge the obligation. It is a general obligation which the state is pledged to pay in the future. The debt of the City is the pecuniary obligation imposed by contract, except the obligations to be satisfied out of the current revenue. Ft. Worth v. Bobbitt, 121 Tex. 14, 36 S. W. (2d) 470, 41 S. W. (2d) 228. The nature of a "debt" in the light of the constitutional provision is discussed in Wilder v. Murphy, 56 N. D. 436, 451 et seq., 218 N. W. 156. We therein showed the distinction between obligations payable out of special assessments, and obligations assumed by the state and payable out of the revenues of the state obtained by taxation, etc.

In the case of Jones v. Brightwood School Dist. 63 N. D. 275, 247 N. W. 884, we were called upon to determine the meaning of the word "indebtedness" and showed that collectible taxes and other funds which can be used as current revenue may be deducted in determining the amount of "debt;" but in the case at bar we need not determine the exact amount of outstanding liabilities for it is clear that if the obligations threatened to be incurred are in fact to be made the general obligations of the City, then the debt limit would be exceeded. "Bonds which do not increase the indebtedness of the city are not within the proviso of paragraph 1 of § 183 of the Constitution." Anderson v. Fargo, 64 N. D. 178, 187, 250 N. W. 794.

Contracts for local improvements, the cost of which is to be borne wholly by the property benefited, do not create any "municipal indebtedness within the constitutional provision limiting municipal indebtedness." Vallelly v. Park Comrs. 16 N. D. 25, 111 N. W. 615, 15 L.R.A. (N.S.) 61; German Nat. Bank v. Covington, 164 Ky. 292, 175 S. W. 330, Ann. Cas. 1917B, 189; and Gadd v. McGuire, 69 Cal. App. 347, 231 P. 754, 760.

In determining the amount of indebtedness in its relationship to the constitutional limitation, the amount of interest to be paid on the refunding bonds is not considered. As pointed out in 6 McQuillin on Municipal Corporations 42, "Interest is not a debt, within the meaning of debt limit provisions, until it is earned and becomes due. And in determining whether an indebtedness will be created in excess of the debt limit, unearned interest cannot be added to the principal. The authority granted by the constitution or statute to contract a debt refers to the amount of the debt at the date at which it is created, and has no reference to the amounts of interest which accrue thereafter. On the other hand, interest which has become due and payable is a part of the existing indebtedness, in figuring the total of municipal indebtedness." See Carlson v. Helena, 39 Mont. 82, 102 P. 39, 44, 17 Ann. Cas. 1233; Continental Securities Co. v. New York C. & H. R. R. Co. 217 N. Y. 119, 111 N. E. 484, 486; Ashland v. Culbertson, 103 Ky. 161, 44 S. W. 441, 442. See also Williams v. Rock Hill, 177 S. C. 82, 180 S. E. 799, 100 A.L.R. 604.

Therefore, the interest already earned and to be incorporated in the new bonds must be considered.

The issuance of bonds by a city only for the purpose of funding special assessments does not create a debt within the meaning of the constitutional provision requiring a vote of electors to increase the debt limit, where the bonds are to be paid by funds to be collected by special assessments, and not by any general taxes that might be assessed against property outside of the assessment district. Gross v. Bowdle, 44 S. D. 132, 182 N. W. 629. See also Valdosta v. Harris, 156 Ga. 490, 119 S. E. 625; Fox v. Bicknell, 193 Ind. 537, 141 N. E. 222. In Lang v. Cavalier, 59 N. D. 75, 228 N. W. 819, the matter of the distinction between a "debt" and "indebtedness," in the light of the constitutional provision limiting the debt and the obligations which arise under special

assessments, was again before the court and therein we showed that "obligations payable out of special assessments are not considered public debts within the meaning of the term 'debt' as used in the constitutional provisions against incurring indebtedness." 59 N. D. 75, 91. The constitutional provision is intended as a limit on general taxation, a protection to the taxpayers. It is self executing as a limitation upon the power to incur debts; (Great Northern R. Co. v. Duncan, 42 N. D. 346, 176 N. W. 992) and enacted for the purpose of "curbing the taxing power and of restraining excessive expenditures that entail tax burdens." Bartelson v. International School Dist. 43 N. D. 253, 256, 174 N. W. 78.

Under the special assessments the payer is merely paying for a special benefit which he himself received and it is his property which is pledged for the payment of the obligation. This distinction must be kept in mind even if all the territorial limits be included in the one improvement district and therefore all of the real property of the city is presumably benefited. The principle differentiating these types is the same without reference to the extent of the improvement district. Where the improvement is to be paid by general tax levy, then it becomes a debt of the municipality, Lawton v. Morford, 146 Okla. 222, 293 P. 1068, 1071, and the purpose for which the taxes are levied does not affect the liability. Neither is it important that the contractual liability is not to be in effect unless assessments remain unpaid. Where the contract pledges the city to pay, even as an eventuality, it is a debt.

Article 20, chapter 44 of the Compiled Laws, under which these warrants were issued prescribes the method of creating sewer districts and watermain districts, the manner of ascertaining the probable cost, the duty of advertising for bids, the assessments of benefits and the method of ascertaining the same. A fund is created for the payment of the sewer district warrants and a fund for the watermain district warrants. If "errors or mistakes in making an assessment, in respect to the total cost of such improvements, or otherwise, occur, or in case of any deficiency in any assessment or otherwise, the city council shall have power, and it shall be their duty from time to time, to cause additional assessments to be made in the manner hereinafter provided, to supply such deficiencies, or correct such errors or mistakes; the total of such assessments not to exceed the benefit to such property, and any

such assessment shall be a lien upon the lots and lands on which it is levied as herein provided for the original assessments, and shall be payable in the same manner, and in the same installments, and shall draw interest at the same rate, and shall be enforced in the same manner as herein provided with respect to the original assessment." Comp. Laws, § 3712.

This is for the purpose of preventing property benefited from escaping payment of its proportionate share of the benefits received. Fargo v. Gearey, 33 N. D. 64, 75, 156 N. W. 552. But there is nothing in this statute to pledge such property for the payment of the benefits other parcels of property receive. The law contemplates that before warrants are issued everything be done, that is humanly possible to be done, to provide in full for the payment of the cost of improvements and for the equitable distribution of the burden to all of the property benefited by the improvement.

There is no question but all was done by the City Council that could be done at the time the improvements were made. The statute also provides that: "All special assessments levied under the provisions of this article shall constitute a fund for the payment of the cost of the improvement for the payment of which they are levied, and shall be diverted to no other purpose, and those for the payment of sewer improvement shall be designated respectively 'sewer district no. ...... fund,' . . . ; and those levied for the payment of water mains shall be known as 'water main district no. ...... fund,' . . . ; and in anticipation of the levy and collection of such special assessments, the city may, at any time after the making of a contract for any such improvements, issue warrants, on such funds, payable at specified times, . . . . Such warrants shall state upon their face for what purpose they are issued, . . . . Such warrants may be used in making payments on contracts for making such improvements or may be sold for cash, at not less than the par value thereof, and the proceeds thereof credited to such fund, and used for paying such improvements." Comp. Laws, § 3711.

Section 3716, Compiled Laws provides: "Whenever all special assessments levied for a specific improvement shall have been collected and applied in payment of the warrants issued for such improvement, and, a deficiency remains, the city council shall levy a tax upon all the

taxable property in the city for the payment of such deficiency, and in case of a balance of such special assessments remaining unexpended, it may be used for repairs of such improvement."

At the time these improvement warrants were issued, § 3599, subd. 5, of the Compiled Laws gave to the city council power to borrow money on the credits of the city for city purposes and to issue bonds therefor "but no such city shall become indebted in any manner or for any purpose to an amount, including existing indebtedness, exceeding five per cent of the taxable property therein, as determined by the last preceding city assessment; provided, that any incorporated city may, by a two-thirds vote at any special or general election increase such indebtedness to an amount equal to three per cent of such assessed valuation beyond said five per cent limit and may issue bonds therefor; provided, further, that any city, . . . may become indebted in any amount not exceeding four per cent of such assessed value without regard to the existing indebtedness of such city for the purpose of constructing or purchasing water works for the purpose of furnishing a supply of water to the inhabitants of such city, or for the purpose of constructing sewers, but for no other purpose whatever, and such city may issue bonds therefor; . . . ."

Provision is also made for the levy and "collection of a direct annual tax sufficient to pay the interest on such debt or such bonds when it falls due, and to pay and discharge the principal thereof when the same becomes due, and such provisions for the collection of such annual tax shall be irrepealable until such debt is paid; . . . ."

Section 2218 of the Compiled Laws provided that: "It shall be unlawful for any city, town or village officer or for the officers of any school district, unless specially and expressly authorized by law, to contract any debt or incur any pecuniary liability, for the payment of either the principal or interest, for which during the current year, or any subsequent year, it shall be necessary to levy on the taxable property of such county, township, city, town or village or school district, a higher rate of tax than the maximum rate prescribed by law, and every contract made in contravention of the provisions of this section shall be utterly null and void in regard to any obligation thereby imposed on the corporation on behalf of which such contract purports to be made; . . . ."

It is clear that the law contemplated that improvement warrants shall be paid out of the fund created for that purpose and out of no other fund. It is assumed the fund created will be ample for the purpose, and it is clear the fund when created was considered as ample. The contractor who made the improvements, the purchaser of the warrants issued for the improvements, and all who dealt with them with reference to these warrants knew that they were payable out of such fund only. "Those who deal with municipalities are bound to take notice and be bound by these constitutional restrictions." Bartelson v. International School Dist. supra (43 N. D. 257, 174 N. W. 78).

Where a contractor agrees to look to the special assessment for payment and takes the risk of its invalidity, he cannot recover from the municipality on contract even in case the assessment is set aside. Connolly v. San Francisco, 4 Cal. Unrep. 134, 33 P. 1109; Alton v. Foster, 207 Ill. 150, 69 N. E. 783, 787; Robinson v. Valparaiso, 136 Ind. 616, 36 N. E. 644, 646; Crawford v. Mason, 123 Iowa, 301, 98 N. W. 795.

A contractor is bound to take notice of the city's power. Enid v. Warner-Quinlan Asphalt Co. 62 Okla. 139, 161 P. 1092. Where a contractor agrees to take compensation out of a fund raised by special assessments or some special or limited fund, he cannot assert a general liability or take judgment to be satisfied out of the general fund or the current expense fund of the municipality. Willapa Harbor Sand & Gravel Co. v. Pacific County, 103 Wash. 309, 174 P. 450; Vulcanite Paving Co. v. Philadelphia, 239 Pa. 524, 86 A. 1086.

Where a municipality levies the assessment and uses due diligence to make it productive in accordance with the law, usually no further liability attaches. Richardson v. Brooklyn, 34 Barb. 569, 576.

Usually warrants issued for an improvement, payable out of a special fund, cannot be collected against the municipality generally although the remedy to collect from the special fund should be lost. Wilson v. Aberdeen, 19 Wash. 89, 52 P. 524.

The holder of special assessment warrants has a remedy by mandamus to compel a valid assessment and levy (Denver v. National Exch. Bank, 34 Colo. 387, 82 P. 448); but in the absence of proof of

wrongful act or negligence on the part of the municipality, it is not held liable on the warrants.

An assessment for improvements differs somewhat from a tax, even though the terms are at times used interchangeably. The basis is different. We have already had occasion to call attention to the fact that special assessments are in their nature a species of taxation; yet generally their classification as assessments of benefits and not as taxes is today recognized by the courts. See Robertson Lumber Co. v. Grand Forks, 27 N. D. 556, 568, 147 N. W. 249.

The foundation of the power to lay this special assessment is the benefit which the object of the assessments confers upon the owner of the property. Hester v. Collector of Taxes, 217 Mass. 422, 105 N. E. 631, 632; Cote v. Highland Park, 173 Mich. 201, 139 N. W. 69, 72; Tuscaloosa v. Hill, 194 Ala. 559, 69 So. 598 (under constitutional provision). The theory is the owners do not in fact pay anything in excess of what they receive by reason of the improvement. Norwood v. Baker, 172 U. S. 269, 43 L. ed. 443, 447, 19 S. Ct. 187.

Upon the issuance of the special assessment warrants payable out of this special fund the municipality pledges its good faith to make the necessary assessments and attempts of collection and to apply the funds collected in payment of the warrants. It does not become liable for deficiencies unless negligence is shown. Denver v. National Exch. Bank, 34 Colo. 387, 82 P. 448. If a claim is made payable only out of a special fund and there is no such fund ordinarily, the municipality is not liable. Loudenslager v. Atlantic City, 80 N. J. L. 658, 77 A. 1060, 82 N. J. L. 530, 81 A. 1134.

The appellants urge that though the special improvement warrants are primarily payable from a fund created by the payment for the benefits received and in themselves are not considered the general obligations of the municipality, nevertheless under the provisions of the law in effect at that time the city is obligated to levy and collect a general tax for the payment of any deficiency, under the provisions of § 3716 of the Compiled Laws as amended by chapter 174 of the Session Laws of 1923, to-wit: "Whenever all special assessments collected for a specific improvement are insufficient to pay the special improvement warrants issued against such improvement with interest, the city council or city commission, as the case may be, shall upon the

maturity of the last special improvement warrant, levy a tax upon all the taxable property in the city for the payment of such deficiency, and in case of a balance of such special assessment remaining unexpended, it may be used for repairs of such improvement."

Section 3716 of the Compiled Laws, already quoted, is § 156 of chapter 62 of the Session Laws of 1905 with but one amendment—the insertion of the expression, "shall upon the maturity of the last special improvement warrant." However, at the same time there was this provision in § 3709 of the Compiled Laws, regarding contracts for sewers and water systems, "Each contract so entered into shall state the time on or before which such work must be completed, and must state from what fund the amount to be paid thereon by the city is to be paid, and that the consideration of such contract is payable only in warrants drawn on such fund, and that such city assumes and incurs no general liability under such contract."

Both these sections, §§ 3709 and 3716, were in force at the time these special improvement warrants were issued.

In the case of Bankers Trust & Sav. Bank v. Anamoose, 51 N. D. 596, 601, 200 N. W. 103, we held that special improvement assessment warrants for the building of watermains and sewers, issued under the provisions of §§ 3709 and 3711 of the Compiled Laws, were such that the city "assumed no general liability on account thereof. It is the evident purpose and intent of the statute to exempt the city from any general liability on account of the warrants so issued. We do not see how such purpose and intent could be more clearly and plainly expressed. It appears that the warrants give notice upon their face for what they were issued and how and from what funds they are payable. There is no room to contend that the holders had no notice of these matters. The appellant argues that to hold the city not generally liable results in injustice; that the city has the improvements and the appellant in good faith having furnished the money to provide them, should be reimbursed. This contention is sufficiently answered by saying that whosoever bought the warrants did so with notice of the statute under which they were issued and by which the city was absolved from general liability excepting as provided in § 3716, Comp. Laws, 1913."

However, we did not construe § 3716 which clearly was not applicable to the facts of the case as they were presented to this court.

In Anderson v. Fargo, 64 N. D. 178, 250 N. W. 794, a construction of § 3716 was again sought. We held, however, that under the facts of that case it was not shown that the indebtedness sought to be incurred "will exceed the indebtedness which the city may lawfully incur for the purpose of constructing sewers under section 183 of the Constitution." Hence, there was no necessity for construing section 3716. However, this section is before us now. This statute must be construed in connection with the other sections dealing with the same subject. It is all part of one general law dealing with cities and city improvements (chapter 62 of the Session Laws of 1905), and it is elementary that the different sections, if there be apparent conflict, must be construed if possible to make a harmonious rendering. There is nothing plainer in the whole chapter than that the city is not to be held responsible generally for the cost of the improvement. The cost is to be paid by the property benefited, from a fund raised by taxation of said property, and from no other source. The city is not to be held liable generally. Not only is this the plain import of the chapter; but it must also be clear that if any portion of the cost, other than the part assigned to the city for intersections of streets, etc. were to become the general obligation of the city, then the taxpayers of the city would be saddled with the cost of improvements in the making of which they had no voice. Only the district benefited by the extension of sewers and waterworks is consulted. The city council determines the necessity for the work and gives general notice; but it is only in case "the owners of a majority of the property liable to be specially assessed for such proposed improvement" protest that the city council considers protest at all. The theory is that the only ones affected are those assessed for the benefits, and, therefore, they are the only ones concerned. If it were not for the language of § 3716, there would be no controversy whatever on the proposition that the city never could be held generally liable.

Under the facts stated in the complaint the city will reach the constitutional debt limit of valid indebtedness by the incurrence of additional debt to the extent of some $6,000.00. Whatever may be the proper interpretation of § 3716 of the Compiled Laws as amended, it must be plain the legislature cannot authorize the city to contract debts beyond the limit fixed by the constitution; neither can it be as-

sumed the legislature so intended. There cannot be any general liability under this section beyond the limits the constitution permits.

It cannot be too often reiterated that those dealing with the city in the matter of public improvements are conclusively presumed to know the extent of the power and the authority of the city council to incur obligations for the city. To a certain extent it is a speculation on their part as to the source of revenue and payment. The constitution and the legislature have seen fit to place upon the shoulders of the contractors and the holders of the warrants the burden of assumption of risk of payment. All the holders can do is to require the city to live up to its contract and here the city has done all that it can do in the way of ascertaining the cost and providing for the payment. If there is an error, or financial and economic conditions become such that loss must fall upon some party to the contract, the loss falls upon the holders of the assessment warrants. It is not reasonable to assume that in one breath the legislature plainly, unequivocally, and frequently states that such indebtedness shall not become a general indebtedness of the city and then in the next breath say under certain circumstances it may become such.

The three statutes under which the defendants purpose to act are chapters 206, 207, and 196 of the Session Laws of 1935.

Chapter 206 authorizes and empowers "cities and villages to issue bonds for the purpose of purchasing outstanding special improvement warrants. . . ."

Section 1 makes provision for the issuance of the "bonds for the purchase of outstanding special improvement warrants of said city or village before or after maturity thereof at the best price obtainable but not exceeding sixty per cent (60%) of the par value thereof and accrued interest to date of purchase; . . . ." The bonds are to be sold at not less than the "par value thereof and the accrued interest thereon." Section 2 authorizes the governing body to issue these bonds without submitting the matter to the electors of the city or to the "Board of Budget Review in the manner required by law for other bond issues." Section 3 makes these bonds the "general obligations of the city and the full faith and credit and unlimited taxing power shall be pledged to their payment."

Section 4 requires the creation of a special fund "for the payment of the principal and interest of the bonds as the same become due." Special assessments collected for the benefit of the improvement warrants purchased are to be credited to this fund and in addition thereto the governing body "shall annually cause a general tax levy to be made against all taxable property in the municipality in an amount which, together with the special assessments collected, will be sufficient to pay the principal and interest of the bonds when the same become due." It is further provided that the general tax limitations heretofore imposed by chapter 235 of the Session Laws of 1929 shall not apply and the tax levy shall not be subject to such limitation although § 5 of the act says this chapter 206 of the Session Laws of 1935 "shall be deemed and construed complete in and of itself and is intended to be an additional remedial measure and shall not be deemed to have amended or repealed any existing law."

The legislature, in chapter 235 of the Session Laws of 1929, limited cities in the levying of taxes to "the amount necessary to raise to meet appropriations included in its annual budget of the current fiscal year, and the sum necessary to be provided as a reserve fund . . . together with a tax sufficient in amount to pay the interest on the bonded debt of the municipality and to provide a sinking fund to pay and discharge the principal thereof at maturity." The rate is limited to "fourteen mills on the net taxable assessed valuation of property in the city." Section 5 of the act. The "general reserve fund" mentioned is provided for in Section 10 but need not be discussed.

This chapter 235 of the Session Laws of 1929 provided that the limitations of § 5 thereof did not apply to:

"(1) Taxes levied pursuant to the provision of § 3716 of the Supplement to the Compiled Laws of 1913, or acts amendatory thereof, for the purpose of paying a deficiency in connection with a special improvement project.

"(2) Nor to taxes levied pursuant to the provisions of § 3723 of the Compiled Laws of 1913 for the purpose of paying a proportion of the cost of a special improvement project by general taxation;

"(3) Nor to levies to pay interest on bonded debt and levies to pay and discharge the principal thereof at maturity. . . ."

The legislature, by chapter 208 of the Session Laws of 1935, changed

this limitation of fourteen mills by permitting an additional levy of two mills for the support of city bands or public libraries.

A casual examination of the complaint in the light of this chapter 206 of the Session Laws of 1935 shows that it is the intent of the defendants to utterly ignore the provisions of § 183 of the Constitution of the state.

The controversy is before us on demurrer; therefore the allegations of the complaint are taken to be true. This being so, it must be clear that the utmost stretch of the imagination would not permit the issuing of the bonds of the city for the purpose of compromising this floated indebtedness of improvement warrants. The complaint shows the limit of indebtedness which may be incurred and also that the bond issue premeditated will be clearly in excess of the limitation fixed by the Constitution.

It is said: "It seems the legislature intended to permit the City to buy outstanding special improvement warrants where the special improvement warrants are actually worth at least as much as the City pays for them."

But it is immaterial whether the special improvement warrants so purchased would be actually worth as much as the city pays for them if the bonds become in fact the general obligation of the city. It might be a good speculation from a financial standpoint; but the result would be to add to the debt limit of the city and, therefore, no matter how advantageous it might be, the constitutional limitation stands as a bar to such transaction.

"All bonds or obligations in excess of the amount of indebtedness permitted by this Constitution" are void and therefore it is beyond the power of the defendants to issue such bonds. However this does not prevent the refunding of the $5000.00 bonds now maturing and which are conceded to be valid obligations of the City.

Chapter 207 of the Session Laws of 1935, under which the defendants purpose to proceed in case chapter 206 is not available, deals with "refunding special improvement warrants" and purports to repeal chapter 178 of the Session Laws of 1929.

Chapter 178 of the Session Laws of 1929 purports to deal with chapter 195 of the Laws of 1927. This chapter 195 of the Session Laws of 1927 authorized and empowered cities "upon the surrender

by the holders thereof of any outstanding special improvement warrants *upon which the city . . . has, or may, become liable,* to refund and reissue the same under such terms and conditions as the governing body of the City . . . may by resolution provide . . . ."; but the rate of interest shall not be in excess of the rate on the refunded warrants. It will be noted that this chapter 195 is concerned with and confined to such "special improvement warrants upon which the city . . . has, or may, become liable." Clearly the law differentiated between the special improvement warrants which are collectible from the fund assessed against specific property only and warrants which are the general indebtedness of the city. This distinction is carried forward in chapter 178 of the Session Laws of 1929 which amends and reenacts chapter 195 of the Session Laws of 1927. This amendatory act authorizes and empowers a city "upon the surrender by the holders thereof of any outstanding *special improvement warrants upon which the city . . . has, or may, become liable,* to refund and reissue the same under such terms and conditions as the governing body of the city . . . may by resolution provide. . . ." This chapter 178 provides that these refunding warrants "shall be payable out of the special assessment fund against which the refunded warrants were issued, which fund shall be replenished by delinquent assessments, as they are paid in, or by reassessment for deficiencies to be made and collected in the manner specified by §§ 3712 to 3739, both inclusive, Compiled Laws of 1913 and acts amendatory thereof and supplemental thereto. . . ." It is clear, therefore, that this chapter 178 does not intend or purport to make special improvement warrants the general obligations of the city. It applies only to improvement warrants "upon which the city has or may become liable."

This chapter 178 of the Session Laws of 1929 is expressly repealed by chapter 207 of the Session Laws of 1935. In its place the legislature provides that: "Any city or village having valid outstanding special improvement warrants may issue refunding special improvement warrants for the purpose of extending the maturities thereof whenever any of said warrants are past due and there is not sufficient money in the special improvement fund for their payment."

Sections two and three of the act prescribe how these refunding warrants shall be issued, sold, or exchanged for the original warrants.

Section four is the section the construction of which becomes important. This section reads as follows: "Refunding warrants shall be payable out of the special improvement fund provided for the payment of the warrants refunded thereby and it shall be the duty of the city or village to preserve and enforce, for the security of the refunding warrants, all rights and duties which constituted security for the refunded warrants. Among the rights and duties so to be preserved shall be the duty of the governing body of the city or village to levy a tax for the payment of any deficiency in the special improvement fund and such tax shall be levied at the date of maturity of the last maturing warrant of the original issue, but may be payable in the years and amounts required to pay principal of and interest on the refunding warrants as the same become due."

So far as this chapter 207 of the Session Laws of 1935 provides merely the substitution of new improvement warrants for the old improvement warrants and does not purport to make these warrants a general obligation of the city, it does not conflict with § 183 of the Constitution. The legislature provides a method for cities and municipalities to obtain public improvements and may vest in the governing body of the city discretionary powers relative to contracts for the collection and payment of the improvement warrants. It has long been the policy of the state to permit reassessments and readjustments in order to keep faith with those dealing with the city and also with the property holders benefited. The legislature has the right to permit the city to compromise this indebtedness, if agreeable to its creditors. It is true that this chapter 207 contains the section four quoted; but all that this purports to do is to maintain for the holders of the warrants the rights and duties of the city with reference to the securities for the payment of the warrants and to maintain the duty of the city to levy such taxes for the payment of deficiencies as the law and the Constitution warrant.

We cannot presume the legislature intended thereby to authorize the city to violate the Constitution, and, therefore, Section four must be interpreted in the light of the Constitution. To substitute new improvement warrants and thus give the property owners who have not paid additional time to pay the indebtedness is a matter wholly within the power of the legislature to determine and of the city to act. Authoriza-

tion of this procedure does not thus subject the property holder who has already paid his full assessment to additional payments, nor does it determine whether his property has in fact paid the full amount of the benefit received. These are matters which are not involved in this suit. Clearly it has not been shown that chapter 207 of the Session Laws of 1935 conflicts with the constitutional provision cited. However, the plaintiff alleges that the defendants, taking advantage of the provisions of this chapter 207, intend to make the refunding warrants general obligations of the city in defiance of § 183 of the Constitution and will do so unless restrained. It is clear that this chapter 207 gives no such power to the governing body of the city, and, therefore, it is proper that they be enjoined from using this law as a basis for so increasing the general indebtedness of the city, but not prohibited from issuing refunding warrants of the same nature as those now existing.

The plaintiffs allege that if the defendants are prevented from using chapters 206 and 207 of the Session Laws of 1935 as media for the increasing of the general indebtedness of the city, they will make use of chapter 196 of the same Session Laws.

An examination of the complaint shows that judgments were entered against the city in the United States District Court for the District of North Dakota; that the cases were brought upon special improvement warrants said to be due and owing from the city; and that judgment was entered by stipulation and upon agreement with the city. On the face of this complaint there is nothing to show that the city was liable upon these warrants and the complaint does not admit any such liability. The complaint does say these "judgments remain outstanding as the apparent and alleged obligation of the city of Mohall;" but we have no means of determining the character of the judgment entered nor its scope. The complaint showing that these judgments are based upon improvement warrants which were not the general obligation of the city we cannot assume, in the absence of any showing in the complaint as to the scope of these judgments, that these judgments are in fact such as are within the contemplation of chapter 196 of the Session Laws of 1935.

This chapter 196 authorizes the compromise of a final judgment for the payment of money "which judgment the municipality may be compelled to pay by tax upon all taxable property therein." This is the

type of judgment involved in chapter 196 and whose compromise is authorized. When there is such judgment entered against the city, the governing body is authorized, in case it gets at least a twenty-five per cent. reduction, to issue the bonds of the city and deliver them at their face value in settlement of the judgment. For the payment of such bonds the city is required to "levy a direct annual and irrepealable tax sufficient in amount to pay the principal and interest of said bonds as they severally mature."

Section four of this act refers to judgments against the city entered "against the municipality in damages for the amount of such warrants by him or them held, on account of the municipality's negligence or breach of duty in the levy or collection of such special assessments." In such case the municipality is authorized to issue bonds in the same manner as the other judgments "the municipality may be compelled to pay."

It will be noticed that this provision authorizes the issuance of bonds to pay judgments obtained on special improvement warrants only in cases where there was breach of duty or negligence.

That a city may become liable on such improvement warrants because of its negligence or breach of duty is determined in Grand Lodge, A. O. U. W. v. Bottineau, 58 N. D. 740, 227 N. W. 363, and therefore a judgment entered because of such negligence and breach of duty would be a valid obligation of the city. As such obligation the governing body of a municipality is concerned with its payment.

The complaint, however, does not show that this judgment was entered on these improvement warrants because of the negligence of the city or its breach of duty. The complaint does not show that this judgment sought to be compromised is of the character contemplated by chapter 196—in fact, the allegations of the complaint would indicate otherwise. Judgment having been entered in the District Court of the United States, we must assume that it is a valid judgment. Procedure for its modification or setting aside cannot be taken in the state courts. But the issue with us is not the character of the judgment but the procedure threatened by the defendants in payment of the judgment. Before the defendants can resort to the provisions of chapter 196 they must show the judgment comes within the purview of the statute, seeing that the complaint shows otherwise.

Section five of the statute says: "Intention of Act. This act shall not be construed or applied to limit or enlarge any municipal power now or hereafter provided for the issuance of any evidence of debt, bonds, or refunding bonds or the levy of any tax for the payment of the same; but this act shall be construed and applied to create additional powers and optional and alternative methods for the single and specific purpose of enabling municipalities to compromise judgments, issue bonds to fund and satisfy the same and levy taxes in amounts necessary for the purpose without respect to limitations otherwise existing; to scale down such judgment and compromise and fund the same over a period of years."

The maximum levy under the statutes which the city may levy in any one year for the payment of any judgment "is ten mills on the assessed valuation thereof regardless of the number or amounts of such judgments." Re Cunningham, 63 N. D. 62, 245 N. W. 896. Chapter 196 does not purport to change the law upon which this decision cited was based. Therefore, the city cannot levy a tax to pay these judgments at any greater rate. But the complaint does not show the city is intending to levy a tax to pay the judgment. It alleges the city intends to issue bonds as a substitute for the judgments and to convert the judgment into a general obligation of the city of an entirely different nature and description.

It is true such a judgment is an indebtedness; but it is not necessarily an indebtedness of the character contemplated by § 183 of the Constitution. If the city attempts to change a judgment obtained because of its negligence into a different form, then the new obligation must be determined by the provisions of the Constitution with reference thereto. The city has no constitutional right to change even a valid judgment so obtained into a form of obligation which will violate § 183 of the Constitution. That the obligation to pay still remains and may be in force does not alter this situation. The judgment holder knows, when he obtains his judgment, what is his method of collection. It is not sufficient to say that the city owes the debt and therefore may pay it in such manner as it deems most advantageous. Both the creditor and the debtor are bound by the law. The law does not purport to authorize a change in the character of the indebtedness. It simply gives optional and alternative methods of settlement. It affects procedure

rather than nature. If the judgment to be compromised by the issuance of bonds was such that the amount of the bonds would not exceed the debt limit, then bonds could be issued.

The matter is before us on demurrer to the complaint. What the defendants seek to do under chapter 206 of the Session Laws of 1935 violates § 183 of the Constitution of this state in the attempt to increase the debt limit of the state beyond the limit permitted and therefore the defendants should be enjoined from the attempt to proceed under the statute.

Chapter 207 of the Session Laws does not conflict with Section 183 of the Constitution; but where the defendants are threatening to make use of such statute, in a way not authorized thereby, so as to increase the debt limit of the city, then they should be enjoined.

Chapter 196 of such session laws cannot be used by the defendants for the purpose of increasing the debt limit of the city beyond the constitutional limitation. The defendants cannot proceed under such chapter to convert a noncontractual obligation into a contractual obligation prohibited by the Constitution, and, therefore, any judgment obtained against the city cannot be converted into bonds of the city in an amount beyond the debt limit authorized.

The plaintiff, therefore, is entitled to a restraining order preventing the defendants from converting the indebtedness represented by the judgments into the general obligations of the city represented by bonds to the extent that such bonds will exceed the debt limit of the city. The decision of the lower court is affirmed.

BURKE, Ch. J., and NUESSLE, MORRIS and CHRISTIANSON, JJ., concur.