[File No. 6472.]

G. W. JONES LUMBER COMPANY, a Corporation, Respondent, v. CITY OF MARMARTH, a Municipal Corporation, Appellant.

(272 N. W. 190.)

Opinion filed March 19, 1937.

*Theodore Swendseid,* for appellant.
*Fuller & Powers,* for respondent.

Burr, J. The defendant issued improvement warrants to install a system of waterworks and sewers. Plaintiff held warrants amounting to $43,247.70 and brought action against the city alleging breach of duty in the collection of said assessments. The court determined:

"That the liability and obligation of the defendant city established as aforesaid, is a liability for breach of duty and negligence and wrongful acts or omission on the part of the city and that the same does not constitute a debt or indebtedness or liability within the meaning of the provisions of the constitution and statutes of the State of North Dakota fixing the limit of indebtedness of municipalities."

Judgment was entered for the amount claimed. No appeal was taken and the judgment is final.

On a compromise settlement the city agreed to pay the sum of $7,750 in full settlement of the judgment, payable in twelve annual installments with interest, and issue its bonds therefor,

"Levy a direct annual and irrepealable tax sufficient in amount to pay the interest and principal of said bonds as the same severally mature. . . ."

"And spread upon the tax lists of all taxable property of the city for collection as a part of the regular tax levies of said city for the year 1936 a sum and amount sufficient to pay the installment of principal and interest above set forth to be paid in the year 1937, to wit: $1275.00; and that said city annually thereafter (until the full sum of $7750 and interest as aforesaid is fully paid) will levy or cause to be levied a similar tax upon all the taxable property of said

city sufficient in amount to pay and discharge, as they may mature, the items and installments of principal and interest in each of said years respectively, as above set forth."

The contract of settlement provided that:

"Upon the delivery to said county auditor, for the said city, of satisfaction or release of the judgment herein described, the city will cause said county auditor to simultaneously deliver said bonds to the judgment creditor. At the time of such delivery of said bonds the same shall become the effective and binding obligations of said city."

The bonds were executed and delivered to the plaintiff, full satisfaction of the judgment was executed, and the judgment discharged of record.

Thereafter the city authorities concluded that the bonds so issued created an indebtedness in excess of the debt limit permitted by § 183 of the Constitution; that, therefore, the compromise and agreement to pay were invalid; but that the discharge of the judgment was effective and binding upon the plaintiff.

The plaintiff thereupon commenced this action, praying for a judgment declaring the original judgment was valid; that the compromise and settlement thereof were in accordance with law; that the city had the right to agree to levy the tax specified in the contract and in the bonds; that said bonds "did not create or add to any indebtedness of the city within the meaning of the constitution and statutes applicable to the incurring of indebtedness by cities;" that the bonds are valid and binding obligations of the defendant, but that in case the bonds should be held to be invalid, the plaintiff is entitled "in appropriate proceedings, to have the said satisfaction and release of judgment vacated and set aside."

In its answer the defendant set forth in full the same grounds of resistance as indicated heretofore.

The trial court determined that the contract of compromise involved herein was "in all things valid and enforceable; that the bonds issued by defendant and delivered to plaintiff are valid and enforceable and that neither said contract nor the said bonds, nor the agreement to levy taxes annually for the payment of the same, creates or increased any indebtedness of the municipality within the meaning of the Constitution, §§ 183 and 187."

314

Judgment for the plaintiff was entered accordingly and the defendant appeals.

Appellant contends:

"(1) That the said contract and agreement for levy of tax to pay the reduced amount of said judgment, and said bonds, and all provisions of said chapter 196 Laws 1935 purporting to authorize the same, is and are (in)valid for the reason that, by the making of said contract the defendant city incurred an indebtedness in violation of the constitution, § 183;

"(2) And for the reason that, while the defendant city may be obliged to pay the said judgment by levy of an annual tax within the statutory limit ten (10) mills on assessed valuation annually, it is without power to voluntarily agree to pay the whole or any part of said judgment and levy a tax annually for the payment of the same, or evidence such agreement by bonds issued and delivered in the form and manner prescribed by chapter 196, Laws 1935.

## II.

"And the Court erred in its Conclusions No. IX in substance and effect that if said compromise agreement and bonds are void, the satisfaction and release of judgment executed by plaintiff is voidable on account of failure of consideration, for the reason: that, notwithstanding the invalidity of said compromise agreement and bonds, the plaintiff is bound by the force and effect of said release and satisfaction of judgment."

It is conceded that if such bonds constitute a debt or indebtedness of the city, or a liability within the meaning of the provisions of § 183 of the Constitution of this State, then at the time of the execution and delivery of the bonds the debt limit of the city was exceeded by their entire amount.

It is conceded the improvement warrants were valid and remained unpaid. By means of the judgment in the first action it was determined that the city had been negligent in the levy of assessments to pay these warrants, and in failing to take the necessary and required steps to assist in the collection, and, therefore, the city was guilty of tort in its relations with the plaintiff. No appeal being taken from

this judgment, such tort on the part of the city is conclusively established.

This action is brought under the provisions of chapter 11A of the Code of Civil Procedure, §§ 7712a1 to 7712a16 of the Supplement.

Though statutory provisions for declaratory judgments are of comparatively recent origin in the United States, the principle is quite old in jurisprudence. This method has been used for several centuries in Scotland. In fact, the courts of that country formulated the basic principles. In England, under the famous judicatory act of 1873 and the rules adopted thereunder, "No action or proceeding shall be open to objection, on the ground that a merely declaratory judgment or order is sought thereby," and this provision is incorporated in § 7712-a1 of the Supplement, almost verbatim. The whole subject is well treated by Professor Sunderland in 16 Mich. L. Rev. 69. The progress of jurisprudence has broadened the concept of judicial power in actual controversies and concerns itself, to some extent at least, with the prevention of trouble and difficulty as well as the settlement after trouble has run its course. These principles are fully discussed in Russian Commercial & Industrial Bank v. British Bank, 90 L. J. K. B. N. S. 1089, 19 A.L.R. 1101—II. L. Of course, it must be a judgment which carries with it all the necessary implications of the term. As pointed out in State ex rel. Hopkins v. Grove, 109 Kan. 619, 201 P. 82, 19 A.L.R. 1116, "a mere advisory opinion upon an abstract question is obviously not a judgment at all, since there are no parties to be bound, and the rights of no one are directly affected."

This court may not give purely advisory opinions. State ex rel. Olsness v. McCarthy, 53 N. D. 609, 613, 207 N. W. 436, 437; State ex rel. Anderson v. Sieg, 63 N. D. 724, 728, 249 N. W. 714, 715. While the judicial power of this state is vested in the Supreme Court and other courts, it is limited to the settlement of pending controversies in a judicial manner. Within the limits of the judicial power the courts are supreme; but the courts are not permitted to go outside of this field of action and render legal opinions on possible controversies arising in the future, nor can the legislature impose such nonjudicial power upon the court. There must, therefore, be an actual controversy between parties, submitted to a court in which a judgment may be entered that will conclusively determine the controversy and be-

come res judicata. See State ex rel. Hopkins v. Grove, 109 Kan. 619, 201 P. 82, 19 A.L.R. 1116, supra; Anway v. Grand Rapids R. Co. 211 Mich. 592, 179 N. W. 350, 12 A.L.R. 26.

Our statute governing declaratory judgments contemplates a final settlement of the controversy. The purpose of the law "is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered." Section 7712a12.

"Any person interested under a . . . written contract . . . may have determined any question of construction or validity arising under the instrument, . . . and obtain a declaration of . . . legal relations thereunder." Section 7712a2.

". . . all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." Section 7712a11.

"The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding." Section 7712a6.

Such judgment "shall have the force and effect of a final judgment or decree." Section 7712a1.

Thus, there must be an actual controversy between the parties, in respect to rights under this contract, submitted to the court for final determination as to the validity of the contract, and under the provisions of § 7712a3 this ". . . contract may be construed either before or after there has been a breach thereof." As to the meaning of the term "actual controversy" and the scope of a similar declaratory judgment statute, see Ætna L. Ins. Co. v. Haworth, 300 U. S. 227, 81 L. ed. 617, 57 S. Ct. 461, 108 A.L.R. 1000, decided March 1, 1937.

If the position of the defendant is sustained, it is clear it intends to repudiate these bonds and at the same time retain, if possible, the benefit of the satisfaction of a valid judgment against it; but if the settlement be valid, there will be no repudiation.

In order to obtain a declaratory judgment, all parties interested in the contract involved must be made parties. Supplement, § 7712a11. This means parties affected by the contract involved. That hereafter

other judgments may be obtained against the city, similar judgments rendered, and the effect of the agreement to levy a tax of a certain amount affect the collection of these future judgments does not prevent the courts from entering a declaratory judgment, for the law provides that ". . . no declaration shall prejudice the rights of persons not parties to the proceeding." Supplement, § 7712a11.

Neither the legislature nor the courts can forecast the future nor determine the range of possibilities, and, therefore, because there may be a possibility of issues in the future arising on a totally different cause of action, and the possibility there may be controversy between judgment creditors does not render the declaratory judgment invalid. It is sufficient if the determination be res judicata between all parties who have a claim or interest in the contract affected. That a municipality may become personally liable for breach of duty due to its negligence in collecting special assessments, and that judgment may be rendered against it for such neglect are established in Grand Lodge, A. O. U. W. v. Bottineau, 58 N. D. 740, 745, 227 N. W. 363, and needs no further elaboration.

That such a judgment may be compromised is clear from the provisions of chapter 196 of the Session Laws of 1935. Section 4 makes provision for the payment of a judgment against the municipality for damages arising through the negligence or breach of duty of the municipality in the levy or collection of such special assessments as are involved here. In Schieber v. Mohall, 66 N. D. 593, 268 N. W. 445, we had occasion to pass upon the constitutionality of the statute and the scope of its provisions and construed it in harmony with the Constitution.

The compromise was entered into in accordance with the provisions of the statute, and it must be clear therefore that as the city had a right to issue bonds "payable in stated annual installments over a period of years, not exceeding twenty-five, and at a rate of interest not exceeding five per cent per annum," the bonds issued in this case were clearly within the power of the city to issue.

The judgment rendered in this case is not such an indebtedness as is contemplated by § 183 of the Constitution which provides: "The debt of any . . . city . . . shall never exceed five per centum upon the assessed value of the taxable property therein; provided that

any incorporated city may, by a two-thirds vote, increase such indebtedness three per centum on such assessed value beyond said five per centum limit. . . . All bonds and obligations in excess of the amount of indebtedness permitted by this Constitution, given by any city, . . . shall be void."

"A judgment for damages for a tort is not a contract. . . ." Louisiana ex rel. Folsom v. New Orleans, 109 U. S. 285, 27 L. ed. 936, 3 S. Ct. 211. The debt limit provision does not apply to obligations sounding in tort, Chicago v. Sexton, 115 Ill. 230, 2 N. E. 263; Lorence v. Bean, 18 Wash. 36, 50 P. 582. The term "debt" is defined in Schieber v. Mohall, 66 N. D. 593, 268 N. W. 445, supra. This judgment, therefore, is not governed by the provisions of this section.

In Schieber v. Mohall, supra, we pointed out that the law does not authorize, nor could it authorize, the city to change the character of the indebtedness involved into such a form as is prohibited by § 183 of the State Constitution. As said therein, "The city has no constitutional right to change even a valid judgment so obtained into a form of obligation which will violate § 183 of the Constitution. That the obligation to pay still remains and may be in force does not alter this situation. The judgment holder knows, when he obtains his judgment, what is his method of collection. . . . Chapter 196 . . . cannot be used . . . for the purpose of increasing the debt limit of the city beyond the constitutional limitation. The defendants cannot proceed under such chapter to convert a noncontractual obligation into a contractual obligation prohibited by the Constitution, and therefore any judgment obtained against the city can not be converted into bonds of the city in and beyond the amount of the debt limit authorized."

It must be clear that the judgment involved in this action is not included in the class of debts prohibited by § 183 of the Constitution. The bonds issued and delivered in exchange for the judgment partake of the nature of the judgment and are no more governed by the provisions of § 183 of the Constitution than the judgment itself or the debt which it represents.

The next point involved deals with the collection of the judgment and the payment of the bonds issued in lieu thereof. It is conceded

by the parties hereto that there are outstanding a large number of special improvement warrants which have become practically value-less because of the negligence of the city and are in the same category as the ones involved herein; that the city is liable thereon and there is danger of additional judgments because thereof. The appellant city, realizing the situation, is concerned about the payment of judgments which may be obtained because of this negligence. Appellant says that if this agreement to levy an irrepealable tax at a rate sufficient to defray the annual payments with interest stands, the necessary levy will amount to practically ten mills on the dollar per year; that ten mills on the dollar is the maximum rate which the city may levy for the payment of judgments under the provisions of § 3681 of the Compiled Laws; that this amount, if applied in settlement of this compromise involved, will not permit any payment upon subsequent judgments until this compromise settlement is extinguished and that under the holding of this court in Re Cunningham, 63 N. D. 62, 245 N. W. 896, "The maximum levy that under such statute may be made upon property within a city for the purpose of the payment of judgments against it, is ten mills on the assessed valuation thereof regardless of the number or amounts of such judgments."

It is true that § 3681 of the Compiled Laws is the general law governing the payment of judgments against a city, and as pointed out in Re Cunningham, supra, the maximum levy is ten mills on the dollar of the assessed valuation, and if this law governs such compromise settlements as are involved herein, then it would be necessary for the court to determine whether it would be proper to enter a declaratory judgment at all because of the probable future situation and the possibility of conflict between subsequent holders and the plaintiff in this case which might call for a re-examination of some features of this settlement. But it was clearly the intent of the legislature that a compromise settlement made under the provisions of chapter 196 of the Session Laws of 1935 should not be governed by the provisions of § 3681 of the Compiled Laws.

Chapter 196 of the Session Laws of 1935, subdivision 5, provides as follows: "This act shall not be construed or applied to limit or enlarge any municipal power now or hereafter provided for the issuance of any evidence of debt, bonds, or refunding bonds or the levy of

any tax for the payment of the same; but this act shall be construed and applied to create additional powers and optional and alternative methods for the single and specific purpose of enabling municipalities to compromise judgments, issue bonds to fund and satisfy the same and levy taxes in amounts necessary for the purpose without respect to limitations otherwise existing; to scale down such judgments and compromise and fund the same over a period of years."

The several provisions of this section are not necessarily contradictory and where, in construing a statute, contradictions appear to arise, it is the duty of the court to so construe the law as to make it harmonious if possible. See 25 R. C. L. 1008 and cases cited.

Standing alone, the provision that "this act shall not be construed or applied to . . . enlarge any municipal power . . . for . . . the levy of any tax . . . ." might imply that the provisions of § 3681 of the Compiled Laws applied to the levy of taxes and therefore that the maximum levy for the payment of all judgments is ten mills on the dollar, and that the bonds issued under the provisions of chapter 196 of the Session Laws of 1935 should be and must be paid out of the fund so raised. But this same subdivision 5 creates "optional and alternative methods" for the settlement of judgments by compromise. The judgments involved in this action are, under the provisions of the session law involved, in a different class entirely from the judgments governed by § 3681 of the Compiled Laws. The city must get the benefit of a reduction of at least twenty-five per cent. of the judgment—in the case involved it gets a reduction of to exceed eighty per cent.—and because of the benefits received through the compromise, the city may "levy taxes in amounts necessary for the purpose (of the compromise) without respect to limitations otherwise existing. . . ." This term "limitations" includes the limitation set forth in § 3681 of the Compiled Laws. Such section does not apply to the settlement made herein. The legislature has provided an "optional and alternative" method for the settlement of this judgment, which includes an "optional and alternative" rate of levy and method of payment. Therefore, we are not concerned with the possible subsequent judgments and the rights of such judgment creditors. This being so, it was not necessary that they be made parties to this suit.

Unless prohibited by the Constitution, the legislature may enact such legislation as it deems wise for the settlement of the indebtedness of the city; and when not prohibited by the Constitution, it may prescribe any maximum levy, provide various methods of settlement, each having a different maximum, or may, as in the class of cases involved herein, leave the maximum to the good judgment of the city officials. The legislature has seen fit to give to the city officials power to "levy a direct annual and irrepealable tax sufficient in amount to pay the principal and interest of said bonds as they severally mature" (Sess. Laws 1935, § 3, chap. 196), and under the provisions of § 5 of said act, already quoted, this levy is an additional and optional method for the payment of the judgment as an alternative to the method of payment provided in § 3681 of the Compiled Laws.

It is clear, therefore, that the controversy involved is such as may be settled under the provisions of chapter 196 of the Session Laws of 1935; that the terms of settlement are in harmony with the provisions of the statute; that the levy for payment is not governed by § 3681 of the Compiled Laws; that the compromise settlement is not in conflict with § 183 of the Constitution; that all parties interested in or who may be affected by this compromise settlement and the levy of taxes to discharge the indebtedness are parties to this suit; that the determination of the issues submitted is a final and complete determination of all issues arising under the settlement; and that it is a proper matter in which to enter a declaratory judgment. This being so, examination of the record shows that the lower court was correct in its determination and the judgment therefore is affirmed.

CHRISTIANSON, Ch. J., and NUESSLE, BURKE, and MORRIS, JJ., concur.